John Luis **GERGEN**, petitioner,
Appellant,

v.

**COMMISSIONER of PUBLIC SAFETY, Respondent.**

No. C6–95–2274.

Court of Appeals of Minnesota.

May 28, 1996.

Review Denied Aug. 6, 1996.

Samuel A. McCloud, Kelly Vince Griffitts, Shakopee, for Appellant.

Hubert H. Humphrey, III, Atty. Gen., Nancy Bode, Steven H. Alpert, Asst. Attys. Gen., St. Paul, for Respondent.

Considered and decided by DAVIES, P.J., TOUSSAINT, C.J., and STONE, J.

## OPINION

BRUCE C. STONE, Judge.*

Driver appeals from an order sustaining revocation of his driving privileges, arguing that (1) he was denied his right to counsel because he could not complete a call to an 800–number from the telephone that was made available to him and (2) the arresting officer violated Minn.Stat. § 481.10 (1994).

## FACTS

Olmsted County Sheriff Deputy Lee Rossman arrested appellant John Gergen for

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

driving while intoxicated, transported him to the station, and read the implied consent advisory. A transcript of their taped conversation reveals that Gergen was mostly noncommittal or nonresponsive about whether he wished to exercise his right to counsel. When he decided that he should probably call an attorney, Deputy Rossman provided a phone book and a telephone directory.

Gergen apparently looked in the yellow pages and randomly chose a law firm with an 800–number. He tried to dial the 800–number but was unable to get through. Deputy Rossman also tried to dial but then realized that this particular telephone was blocked from dialing 800–numbers. Deputy Rossman again encouraged Gergen to call an attorney but told him that he would have to pick a number that was not an 800–number.

Thirty-six minutes then elapsed before Gergen decided that he was done looking for an attorney. He consented to a breath test, which revealed an alcohol concentration of .22. The Commissioner of Public Safety revoked Gergen's driving privileges, and the district court affirmed.

## ISSUES

1. Where a district court determines that a person arrested for driving while intoxicated did not make a good faith effort to contact an attorney, is the driver's right to counsel vindicated even though the telephone provided by the arresting officer is blocked from dialing 800–numbers?

2. Did the police officer violate Minn.Stat. § 481.10?

## ANALYSIS

### I.

■ A person arrested for driving while intoxicated (DWI) has a limited right to consult an attorney before deciding whether to submit to chemical testing, provided the consultation does not unreasonably delay the testing. *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 835 (Minn.1991) (holding that right to counsel under implied consent statute is limited because of the "evanescent nature of alcohol"); *see* Minn. Const. art. I, § 6 ("In all criminal prosecu-

tions the accused shall enjoy the right * * * to have the assistance of counsel in his defense.").

■ A limited right to counsel means "the right to consult with a lawyer of [the driver's] own choosing." *Prideaux v. State, Dep't of Pub. Safety*, 310 Minn. 405, 421, 247 N.W.2d 385, 394 (1976). A police officer not only must inform the driver of the right to counsel but also must assist in vindicating this right. *Butler v. Commissioner of Pub. Safety*, 348 N.W.2d 827, 829 (Minn.App.1984). A police officer may vindicate a driver's limited right to counsel by providing a telephone and a reasonable amount of time to contact and speak with an attorney. *Prideaux*, 310 Minn. at 421, 247 N.W.2d at 394. *But see Butler*, 348 N.W.2d at 829 (police officer need not ensure that "the defendant has received the best or even proper counsel").

■ Whether a driver's right to counsel was vindicated becomes a question of law for the appellate court if the facts are undisputed. *Kuhn v. Commissioner of Pub. Safety*, 488 N.W.2d 838, 840 (Minn.App.1992), *review denied* (Minn. Oct. 20, 1992). There is no definitive rule on what constitutes a reasonable amount of time. *Id.* at 842 ("We propose no definite or exclusive set of factors [as to what constitutes a reasonable amount of time]."). Rather, the relevant inquiry focuses "both on the police officer's duties in vindicating the right to counsel and the defendant's diligent exercise of the right." *Id.* Thus, "as a threshold matter the driver must make a good faith and sincere effort to reach an attorney." *Id.* Whether Gergen made a good faith effort to contact an attorney is a fact-specific inquiry, and this court need only determine whether the district court's finding is clearly erroneous. A finding of fact is clearly erroneous " 'only if, upon review of the entire evidence, a reviewing court is left with the definite and firm conviction that a mistake has been made.' " *Novack v. Northwest Airlines, Inc.*, 525 N.W.2d 592, 597 (Minn.App.1995) (quoting *Gjovik v. Strope*, 401 N.W.2d 664, 667 (Minn.1987)).

■ The district court concluded that Gergen did not make a good faith effort to

contact an attorney, finding that Gergen was "not interested in vindicating his limited right to counsel" and that Gergen "made half-hearted attempts to contact an attorney in order to please the officer." We agree.

The transcript reveals that when Deputy Rossman initially asked Gergen if he wanted to contact an attorney, Gergen did not directly answer. He was only concerned about washing some blood off of his hands. When Deputy Rossman again asked "Do you want to call an attorney?," Gergen said, "I think so" but then accused Deputy Rossman of "badgering" him. At this point, Deputy Rossman provided Gergen with a phone book and a telephone.

The transcript shows that Gergen did not have a particular attorney in mind. In fact, he told Deputy Rossman

> I don't even know what who to call. I would expected you to give me some advice as to who to call.

Gergen apparently looked in the yellow pages then and chose the law firm of Meshbesher & Spence. He was unable to reach the law firm by dialing their 800–number. When Deputy Rossman explained that the phone was blocked to 800–numbers, Gergen asked for a coat because he was cold. He said: "I guess who do you want me to call. I'll call anybody I know but I'm cold." Deputy Rossman again encouraged Gergen to call an attorney but told him that he would have to pick a number that was not an 800–number. By this time, however, Gergen was dialing his own telephone number to arrange a ride home. Deputy Rossman asked one more time, "Do you have an attorney's number you want to try?" Gergen replied: "Not particularly. I can't seem to get through." Gergen finally answered that he was done looking for an attorney.

■ Gergen asserts that Deputy Rossman failed to facilitate the right to counsel because the telephone he provided was blocked to toll-free numbers. He relies on *Larson v. Commissioner of Pub. Safety*, No. C5–94–1378, 1994 WL 714313 (Minn.App. Dec.27, 1994), an unpublished decision holding that a driver was denied his right to counsel because he could not dial the long distance telephone number of a specific attorney. *Larson* is unpublished and therefore not controlling. More importantly, we agree with the district court that Gergen did not make

> a good-faith, sincere attempt to contact the "1–800" attorney or any other attorney. The officer attempted to vindicate [Gergen's] right to counsel, but [Gergen] was more interested in washing his hands, finding a coat, and arranging for a ride home.

Having reviewed the record, we cannot say that this finding is clearly erroneous. The record shows that Gergen did not specifically choose an attorney at Meshbesher & Spence. Moreover, in its memorandum of law to the district court, the Commissioner argued that Gergen could have reached the law firm of Meshbesher & Spence by dialing their local Rochester number. Unlike the driver in *Larson*, Gergen had an alternative number to reach his "attorney of choice."

We also must balance the effort made by Gergen against the efforts made by Officer Rossman. *See Kuhn*, 488 N.W.2d at 842 (stating that the focus is "both on the police officer's duties in vindicating the right to counsel and the defendant's diligent exercise of the right"). For 36 minutes, Officer Rossman assisted Gergen by repeating parts of the implied consent advisory, explaining to him what his rights entailed, providing a telephone and a telephone directory, and offering to dial any phone number other than an 800–number. We do not believe that the legislature intended to protect drivers who were too confused or too intoxicated to exercise their rights under the implied consent law. *See Johnson v. Commissioner of Pub. Safety*, 375 N.W.2d 99, 102 (Minn.App.1985) ("[P]ersons who are too intoxicated to understand their rights will not be protected by the courts in drunk-driving cases").

The record adequately supports the district court's finding that Gergen did not make a good faith effort to contact an attorney and the district court properly sustained revocation of Gergen's driving privileges.

II.

■ Minnesota law provides that

[a]ll officers or persons having in their custody a person restrained of liberty * * * shall admit any attorney retained by or in behalf of the person restrained, or whom the restrained person may desire to consult, to a private interview at the place of custody. **Such custodians, upon request of the person restrained, as soon as practicable, and before other proceedings shall be had, shall notify the attorney of the request for a consultation with the attorney.**

Minn.Stat. § 481.10 (1994) (emphasis added). Gergen claims that this statute places an absolute duty on the police officer to provide a telephone with unrestricted dialing access and, additionally, places an absolute duty on the police officer to contact the attorney and inform the attorney of the request of the person in custody.

While the district court did not decide this issue, we take this opportunity to consider that argument. It is clear from a review of the legislative history of Minn.Stat. § 481.10 that the statute currently does not apply to implied consent proceedings.

Gergen's appeal brief notes that the right to counsel as established in *Prideaux* was based on Minn.Stat. § 481.10. This is a correct statement as far as it goes but one that ignores nearly 20 years of legislative amendments and case law construing a driver's right to counsel under the implied consent statute. *Prideaux* established a driver's limited right to counsel under the implied consent law and effectively but not expressly overruled prior case law that had rejected such a right. *Prideaux,* 310 Minn. at 408–14, 247 N.W.2d at 388–91. The *Prideaux* court construed Minn.Stat. § 481.10 as providing a statutory basis for a driver's limited right to counsel. *Id.* at 416–19, 247 N.W.2d at 392–94. In dictum, however, the court stated:

we cannot see why evidence gathering for prosecution for driving under the influence using implied-consent procedures is any less subject to constitutional scrutiny than other evidence-gathering procedures such as searches, use of informers, or custodial interrogation.

*Id.* at 410, 247 N.W.2d at 389. In 1978, the legislature signified its concurrence with *Prideaux* by expanding the implied consent advisory to include notice to the driver of the right to counsel. *See* 1978 Minn. Laws ch. 727, § 3.

The 1984 legislature again amended the law by removing from the advisory the language that, in effect, gave the driver a limited right to consult with an attorney before submitting to a chemical test. *See Nyflot v. Commissioner of Pub. Safety,* 369 N.W.2d 512, 515 (Minn.1985) (holding that "the 1984 amendment controls" and "that a driver arrested for DWI no longer has even a limited statutory right to consult with counsel before deciding whether to submit to chemical testing"). Thus, *Nyflot* eliminated any basis— statutory or constitutional—for providing a driver in an implied consent proceeding with a right to counsel. *But see id.* at 519–20 (Yetka, J. dissenting) (noting that Minn.Stat. § 481.10 remained good law and criticizing majority's opinion as effectively amending "the statute without legislative authorization").

Finally, in *Friedman,* the supreme court held that

under the right-to-counsel clause in article I, section 6 of the Minnesota Constitution, an individual has the right, upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing.

473 N.W.2d at 835. But *Friedman* was decided *solely* on the basis of the *state Constitution. Id.* at 837. Therefore, *Friedman* did not resurrect Minn.Stat. § 481.10 as a basis—in an implied consent proceeding—for the driver's right to counsel. As a matter of law, *Friedman* and not *Prideaux* controls, and Minn.Stat. § 481.10 does not apply to implied consent proceedings under Minn. Stat. § 169.123.

## DECISION

Gergen was not denied his limited right to counsel. The record adequately supports the district court's finding that Gergen did not make a good faith effort to contact an attorney. The district court properly sustained the revocation of Gergen's driving privileges.

**Affirmed.**