Gene David LINDE, petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C5–98–1227.

Court of Appeals of Minnesota.

Dec. 15, 1998.

808

Dean S. Grau, Minneapolis, for appellant.

Hubert H. Humphrey III, Attorney General, Peter R. Marker, Assistant Attorney General, St. Paul, for respondent.

Considered and decided by DAVIES, P.J., and AMUNDSON and HARTEN, JJ.

## OPINION

DAVIES, Judge

Appellant contests a district court order sustaining revocation of his driving privileges under the implied consent statute. Appellant argues that his limited right to counsel was not vindicated, that he did not refuse testing, and that, if refusal occurred, it was reasonable. We affirm.

## FACTS

At approximately midnight on August 10, 1997, Deputy Charles Malepsy arrested appellant Gene David Linde for driving while intoxicated. At the Freeborn County Law Enforcement Center, Deputy Malepsy read the implied consent advisory to appellant. The advisory explains that (1) a driver has the right to consult an attorney before deciding whether to submit to testing, (2) if the driver is unable to contact an attorney he must make a decision on his own within a reasonable period of time, (3) refusal to test is a crime, and (4) refusing to make a decision regarding testing is considered a refusal. Deputy Malepsy then asked appellant, "Do you understand what I have just explained?" and appellant replied, "Yes." When Deputy Malepsy asked appellant whether he would submit to testing, appellant replied, "Not until I talk to my attorney."

Appellant indicated that he wished to call his nephew, an attorney. At 12:52 a.m., Deputy Malepsy provided appellant with a local telephone directory and told appellant that he would dial any number appellant requested.[1] Because appellant did not know his nephew's telephone number, Deputy Malepsy called directory assistance and tried to reach several of appellant's relatives in an unsuccessful attempt to obtain the correct number.

At 1:30 a.m., after trying to contact appellant's nephew for 38 minutes, Deputy Malepsy advised appellant that he would have to make an uncounselled decision regarding testing. Deputy Malepsy then reread the section of the implied consent advisory informing appellant he had a right to consult an attorney before deciding whether to submit to testing, but that if he was unable to contact an attorney he must make a decision on his own. When Deputy Malepsy again inquired about testing, appellant stated, "Not until I talk to my lawyer." Deputy Malepsy treated this as a refusal to test, and gave appellant a copy of the notice and order of revocation.

1. Deputy Malepsy testified that he offered to dial the numbers requested by appellant pursuant to a local policy that drivers should not be allowed to personally dial the telephone. Deputy Malepsy testified that the purpose of the policy is to prevent intoxicated drivers from disturbing the public by dialing wrong telephone numbers late at night.

After an implied consent hearing, the district court determined that appellant's limited right to counsel had been vindicated and sustained the revocation of appellant's driving privileges. This appeal followed.

## ISSUES

I. Was appellant's limited right to counsel vindicated even though he was not allowed to dial the telephone personally?

II. Did the district court err by determining that appellant refused testing?

III. If appellant refused testing, was that decision reasonable?

## ANALYSIS

### I.

 A driver has a limited right to consult with counsel before deciding whether to submit to testing. *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 832 (Minn.1991). That right is vindicated if the driver "is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Prideaux v. State, Dep't of Pub. Safety*, 310 Minn. 405, 421, 247 N.W.2d 385, 394 (1976). But the driver must make a diligent effort to contact an attorney. *Kuhn v. Commissioner of Pub. Safety*, 488 N.W.2d 838, 842 (Minn.App.1992), *review denied* (Minn. Oct. 20, 1992). And if counsel cannot be contacted within a reasonable time, the driver must make an independent decision regarding testing. *Friedman*, 473 N.W.2d at 835. To the extent the facts are uncontested, whether a driver was given a reasonable opportunity to consult with counsel is a question of law that is reviewed de novo. *McNaughton v. Commissioner of Pub. Safety*, 536 N.W.2d 912, 914 (Minn.App. 1995).

 Appellant argues that his right to counsel was not vindicated because Deputy Malepsy did not allow him to dial the telephone himself. This court has stated that, "absent extraordinary circumstances, drivers must be permitted to personally use the phone when trying to contact counsel." *Mulvaney v. Commissioner of Pub. Safety*, 509 N.W.2d 179, 181 (Minn.App.1993); *see also*

*McNaughton*, 536 N.W.2d at 913–14 (reversing revocation where driver was given list of five local attorneys who handled DWI cases, but had no access to telephone books and was not allowed to dial telephone personally); *Delmore v. Commissioner of Pub. Safety*, 499 N.W.2d 839, 842 (Minn.App.1993) (right to counsel not vindicated when officer dialed number of public defender, handed telephone to driver, and told driver that he could talk to that attorney); *Clough v. Commissioner of Pub. Safety*, 360 N.W.2d 428, 430 (Minn.App. 1985) (right to counsel not vindicated when officer telephoned public defender, who did not return call, and refused to allow driver to call parents for assistance in contacting attorney).

But this court has also held that a driver's right to consult counsel may be vindicated even though the driver was not allowed to dial the telephone personally. *See, e.g., Gergen v. Commissioner of Pub. Safety*, 548 N.W.2d 307, 310 (Minn.App.1996) (officer vindicated driver's right to counsel by providing telephone and directory for 36 minutes and offering to dial any telephone number, other than an 800–number, selected by driver), *review denied* (Minn. Aug. 6, 1996). And this court has never, in the absence of other procedural deficiencies that limit a driver's ability to contact an attorney of the driver's own choosing, held that mere refusal to allow a driver to dial the telephone personally constitutes per se denial of that driver's limited right to counsel. For example, this court reversed the revocation of the driver's privileges in *McNaughton* because the driver

> was essentially limited to the attorneys on [the] list: he had no access to telephone books, either local or out-of-town, and he had no direct access to the telephone or directory assistance.

536 N.W.2d at 915. In *Mulvaney*, this court reversed the revocation when the driver was given only six minutes to contact his attorney and the officer made only one attempt to contact the attorney requested by the driver. 509 N.W.2d at 181–82. The present case is easily distinguished from *McNaughton* and *Mulvaney*. While appellant was not allowed to dial the telephone personally, he effectively had personal use of the telephone, a tele-

phone directory, and directory assistance for 38 minutes. His right to contact counsel was not otherwise limited by law enforcement officials and Deputy Malepsy fulfilled his duty to assist in vindicating appellant's right to counsel.

We now explicitly rule that refusing to allow a driver to dial the telephone personally does not, by itself, deny the driver's right to counsel.

■ In this case, appellant alone is to blame for his failure to contact an attorney. He did not remember his nephew's correct name or telephone number, or even the state he practiced in (California). And he repeatedly refused to contact local counsel even after it became apparent that his nephew could not be located. *See Eveslage v. Commissioner of Pub. Safety*, 353 N.W.2d 623, 627 (Minn.App.1984) (right to counsel vindicated where driver, when provided with telephone and directory, tried to call one attorney and refused to attempt to contact any other counsel). Appellant did not make a "good faith and sincere effort to reach an attorney" and cannot now complain that he was prejudiced. *Kuhn v. Commissioner of Pub. Safety*, 488 N.W.2d 838, 842 (Minn.App. 1992), *review denied* (Minn. Oct. 20, 1992).

## II.

■ A driver's license may be revoked *if* the driver refuses to submit to testing under the implied consent statute. Minn.Stat. § 169.123, subd. 2(a)(3) (1996). Appellant contests the district court's factual determination that his refusal to submit to testing constituted a refusal under the implied consent statute. Deputy Malepsy testified that he twice asked appellant whether he would submit to testing and that appellant twice clearly stated that he would not submit to testing until he had spoken with his attorney. The second time was after Deputy Malepsy advised appellant that he would have to make an uncounselled decision about testing, and reread the applicable part of the implied consent advisory form. Deputy Malepsy's notations on the advisory form, and his subsequent written police report, support this testimony. The district court's findings of fact were not clearly erroneous.

■ We agree with appellant that Deputy Malepsy's final question—asking whether appellant would take a blood or urine test—was a rather indirect way of telling him that his opportunity to consult with counsel had expired and that unless he made an uncounselled decision to take a test he would be charged with refusal. We emphasize that law enforcement officials must give the driver notice that the search for an attorney is over when a driver has failed to contact an attorney after being provided with a reasonable opportunity to do so. Officers must then, before charging the driver with refusal, clearly offer the driver one final opportunity to make an uncounselled decision regarding testing. In this case, Deputy Malepsy did communicate to appellant that he had been given an adequate opportunity to contact an attorney and then gave him a final opportunity to make a testing decision. Appellant refused to make a decision and the Commissioner did not err by revoking appellant's license for refusing testing.

## III.

■ Appellant suggests that his refusal to take a blood or urine test was reasonable because he was "offended" at having been handcuffed and was confused about whether he had already submitted to testing. A driver has an affirmative defense if the refusal to submit to testing was reasonable. Minn.Stat. § 169.123, subd. 6(c) (1996). But taking offense is not an acceptable reason to refuse testing, and confusion regarding the testing obligation becomes an acceptable basis for refusal only

> if the police have misled a driver into believing a refusal was reasonable or if the police have made no attempt to explain to a confused driver his obligations.

*Frost v. Commissioner of Pub. Safety*, 401 N.W.2d 454, 456 (Minn.App.1987). There is no evidence that appellant was confused or misled by anything Deputy Malepsy told him. Appellant's refusal to submit to testing was not reasonable.

## DECISION

Appellant's limited right to counsel was vindicated, even though he was not allowed

to dial the telephone personally, because he had effective use of a telephone, a telephone directory, and directory assistance for more than 30 minutes. After appellant failed to contact an attorney during that time, he was given a final opportunity to make an uncounselled decision regarding testing. He refused to make a testing decision and was properly charged with refusal.

**Affirmed.**