Kirt Fitzgerald **GROE**, petitioner, Appellant,

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C4–99–1665.

Court of Appeals of Minnesota.

June 27, 2000.

Review Denied Sept. 13, 2000.

Richard Lee Swanson, Chaska, MN (for appellant).

Mike Hatch, Attorney General, Jeffrey S. Bilcik, Assistant Attorney General, Jeffrey F. Lebowski, Special Assistant, St. Paul, MN (for respondent).

Considered and decided by CRIPPEN, Presiding Judge, AMUNDSON, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge

Appellant's driver's license was revoked pursuant to Minn.Stat. § 169.123, subd. 4(e) (1998) and the district court sustained the revocation. Appellant challenges the district court's decision, arguing that the police did not have probable cause to believe he was driving under the influence of alcohol, and that his right to counsel was not vindicated. Because (1) the police had probable cause to invoke the implied consent law and (2) it was impossible for appellant to invoke his right to counsel, we affirm.

## FACTS

On March 10, 1999, appellant Kirt Groe was seriously injured in a two-car accident. Appellant failed to yield before turning left in front of oncoming traffic. When Corporal Buck of the Minnesota State Patrol arrived at the scene he was unable to speak to appellant because paramedics were attending to his injuries and appellant was unresponsive. Buck concluded that appellant was impaired in some way because he had made such an elementary driving error. Buck requested that dispatch send an officer to the hospital to question appellant regarding possible alcohol consumption.

Lieutenant Raiter went to the hospital to investigate the accident. A paramedic and an attending physician told Raiter that appellant smelled of alcohol. Appellant was unconscious and, therefore, Raiter could not ask appellant if he had been drinking. While appellant was unconscious, Raiter instructed a nurse to obtain a blood sample but this attempt was unsuccessful because the needle broke. Raiter left the hospital to get another test kit and when he returned appellant had regained consciousness.

Appellant was in serious condition when he regained consciousness; he had intravenous tubes in both arms, was fitted with a neck brace, and had at least three medical personnel attending him at all times; a helicopter was en route to transport him to another hospital. Raiter asked appellant if he had been drinking, and appellant answered yes. Raiter then read appellant the implied consent advisory. Raiter told appellant that it was impossible for him to consult with counsel about taking the test and appellant agreed to take the test without speaking to counsel. The test results revealed that appellant's alcohol concentration was in excess of .10, the legal limit. Appellant was charged with gross misdemeanor driving while intoxicated (DWI) and his driver's license was revoked.

## ISSUES

I. Did police have probable cause to give appellant the implied consent advisory?

II. Did police violate appellant's limited right to counsel?

## ANALYSIS

### I.

Appellant asserts that the district court wrongly concluded that the police had probable cause to invoke the implied consent law. A determination of probable cause is a mixed question of fact and of law. *Clow v. Commissioner of Pub. Safety,* 362 N.W.2d 360, 363 (Minn.App. 1985), *review denied* (Minn. Apr. 26, 1985). After the facts are determined, this court must apply the law to determine if probable cause existed. *Id.* This court does not review probable cause determinations de novo, instead, we determine if the police officer "had a substantial basis for concluding that probable cause existed at the time of invoking the implied consent law." *State v. Olson,* 342 N.W.2d 638, 641 (Minn. App.1984) (citing *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). A reviewing court must consider the totality of the circumstances when determining probable cause. *Eggersgluss v. Commissioner of Pub. Safety,* 393 N.W.2d 183, 185 (Minn.1986).

To invoke the implied consent law, a police officer must have probable cause to believe the person was driving in violation of Minn.Stat. § 169.121, and one of the following conditions exists:

(1) the person has been lawfully placed under arrest for violation of section 169.121, or an ordinance in conformity with it;

(2) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury, or death;

(3) the person has refused to take the screening test provided for by section 169.121, subdivision 6; or

(4) the screening test was administered and indicated an alcohol concentration of 0.10 or more.

Minn.Stat. § 169.123, subd. 2(a) (1998). It is a crime to drive a motor vehicle while under the influence of alcohol. Minn.Stat. § 169.121, subd. 1(a) (1998). Appellant does not dispute that he was involved in a motor vehicle accident resulting in property damage, but does dispute the existence of probable cause to believe that he was driving in violation of section 169.121 subd. 1(a).

"Probable cause exists when all the facts and circumstances would lead a cautious person to believe that the driver was under the influence." *Davis v. Commissioner of Pub. Safety,* 509 N.W.2d 380, 392 (Minn.App.1993) (circumstances consisting of probable cause included: suspect smelled of alcohol, had bloodshot and glossy eyes, had slurred speech, admitted to drinking and failed the field sobriety tests), *aff'd,* 517 N.W.2d 901 (Minn.1994); *see also Heuton v. Commissioner of Pub. Safety,* 541 N.W.2d 361, 363 (Minn.App. 1995) (under certain circumstances an officer may need only "one objective indication of intoxication to constitute probable cause to believe a person is under the influence"). In addition, the collective knowledge of all the police officers is imputed to the arresting officer for the purpose of determining if the requisite probable cause exists for an arrest. *State v. Conaway,* 319 N.W.2d 35, 40 (Minn.1982).

While at the accident scene Buck concluded that appellant might have been drinking based on the substantial damage to the vehicles and the elementary nature of the driving mistake. Based on these factors, Buck requested that an officer go to the hospital to investigate whether appellant had been drinking. At the hospital, Raiter, the investigating officer, was unable to assess appellant's condition because appellant was unconscious and medical personnel were attending to his injuries. Raiter learned from a paramedic and an attending doctor that appellant smelled

of alcohol. Statements by medical personnel may be used to assess probable cause. *See Heuton*, 541 N.W.2d at 363 (probable cause found when officer relied on paramedic's statement that he detected alcohol on the driver's breath and there was no apparent reason for such a serious one car accident absent driver impairment). Additionally, when appellant regained consciousness, Raiter asked appellant if he had been drinking and appellant answered "yes." When a driver admits to drinking, the admission may support probable cause to believe that the driver is under the influence. *Foster v. Commissioner of Pub. Safety*, 381 N.W.2d 512, 515 (Minn.App. 1986). It was after this admission that Raiter read appellant the implied consent advisory and successfully obtained a blood sample.

It is clear that Raiter had probable cause to invoke the implied consent advisory.

## II.

■ Appellant also claims that his right to counsel was violated because he was not able to vindicate his right. The determination of whether an officer vindicated a driver's right to counsel is a mixed question of law and fact. *Kuhn v. Commissioner of Pub. Safety*, 488 N.W.2d 838, 840 (Minn.App.1992), *review denied* (Minn. Oct. 20, 1992). Once the facts are established, their significance becomes a question of law for de novo review. *Gergen v. Commissioner of Pub. Safety*, 548 N.W.2d 307, 309 (Minn.App.1996), *review denied* (Minn. Aug. 6, 1996). An individual has a limited right, upon request, to obtain legal advice before deciding whether to submit to chemical testing, provided the consultation does not unreasonably delay administration of the test. Minn.Stat. § 169.123, subd. 2(b)(4) (1998); *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 835 (Minn.1991). A driver must be informed of this right, and a police officer must assist in its vindication. *Id.* But this

limited right is "contingent upon the driver's physical ability to consult with counsel and the reasonably timely exercise of this ability." *State, Dep't of Pub. Safety v. Wiehle*, 287 N.W.2d 416, 419 (1979).

■ As a general rule, the right to counsel is vindicated if the driver "is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Linde v. Commissioner of Pub. Safety*, 586 N.W.2d 807, 809 (Minn. App.1998) (quotation omitted). But, "[i]f counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel." *Friedman*, 473 N.W.2d at 835 (quoting with approval *Prideaux v. State, Dep't of Pub. Safety*, 310 Minn. 405, 421, 247 N.W.2d 385, 394 (1976)). Whether a person's right to counsel has been vindicated is determined by the totality of the circumstances, including the evanescent nature of alcohol. *Parsons v. Commissioner of Pub. Safety*, 488 N.W.2d 500, 502 (Minn.App.1992).

■ The parties do not dispute that Raiter read appellant the implied consent advisory and specifically told appellant that he had the right to consult an attorney. While it is unclear whether appellant asserted his right to consult an attorney, the district court concluded this fact was irrelevant because it was impossible for appellant to speak to an attorney under the prevailing conditions. Appellant asserts that the record does not support a finding of impossibility and that Raiter improperly convinced appellant to take the test without the assistance of an attorney. Test results may be disregarded if an individual has been coerced into making the decision to submit to chemical testing without the assistance of counsel. *Kuhn*, 488 N.W.2d at 840.

There is little Minnesota case law concerning physical impossibility as a barrier to invoking the right to counsel.[1] In this

---

1.  There are two unpublished Minnesota cases       that deal with this issue. *See Arias v. Com-*

case, appellant was not offered a telephone and was required to make a decision without the assistance of counsel. The district court found that the severity of appellant's injuries and the constant medical attention appellant was receiving made it physically impossible for appellant to use a telephone. The district court found that: (1) appellant had intravenous tubes in both arms; (2) appellant was strapped to a backboard awaiting helicopter transport; (3) at least three medical personnel were attending to appellant at all times; (4) a helicopter was en route to the hospital; and (5) that medical staff indicated that they would not interrupt treatment to permit appellant to use the phone. All but one of these findings of facts are directly supported by the record.[2]

Raiter properly administered the implied consent advisory, and specifically notified appellant of his right to speak to an attorney. Raiter's statement to appellant that it would be impossible for him to speak to an attorney is supported by the record and was not made to mislead appellant. Under these circumstances we conclude that the evidence supports the district court's finding that it was physically impossible for appellant to use a telephone to contact counsel.

In addition, the right to contact counsel is limited by the evanescent nature of alco-

hol. *Delmore v. Commissioner of Pub. Safety,* 499 N.W.2d, 839, 841, (Minn.App. 1993). Here a helicopter was en route and the medical personnel were in the process of preparing appellant for helicopter transport. If the implied consent blood test was not taken before the helicopter arrived, the next possible opportunity, if at all, would not occur until appellant arrived at a hospital in the metropolitan area.

We hold that, due to appellant's physical inability to use the telephone before leaving the Glencoe hospital and the evanescent nature of alcohol, the district court did not err in concluding appellant's right to counsel was not violated.

## D E C I S I O N

 The right to counsel of a driver prior to taking a blood test pursuant to implied consent procedures is not violated if the driver's need for medical treatment makes it impossible for the driver to use the telephone.

**Affirmed.**

---

*missioner of Pub. Safety,* No. C8–95–2275, 1996 WL 208450 (Minn.App. Apr.30, 1996) (unpublished opinion) (an officer did not violate a driver's right to counsel by failing to interrupt medical treatment in a hospital emergency room to provide access to a telephone when medical personnel advised that they could not delay treatment while the driver used the telephone); *but see State v. Day,* No. C7–98–1682, 1999 WL 243398 (Minn. App. Apr.27, 1999) (unpublished opinion) (where an officer did not read the statement regarding right to consult an attorney because the doctor was in a hurry to take the driver to another part of the hospital for further testing. This court held that the individual's rights were not vindicated because the officer should have informed the driver of his constitutional right and told him that he needed to make a quick decision).

2. The district court's finding that "medical staff indicated that they would not interrupt treatment to permit the [appellant] to use the phone" seems to have been inferred from Raiter's testimony. Raiter did not testify that medical staff said they would not stop treatment nor did any medical personnel testify to that effect. Although the district court's choice of words, *"medical staff indicated,"* appears to be in error, the finding itself does not appear to be clearly erroneous. District courts may make reasonable inferences from the facts. *State v. Lee,* 585 N.W.2d 378, 383–84 (Minn.1998). The court's finding that medical staff would not stop treatment to allow appellant to use the phone is a reasonable inference based on the severity of appellant's injuries and the continuous medical treatment received by appellant.