*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0010**

Rufus Cornelius Loyd, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed September 29, 2014
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CV-13-7446

Rufus Cornelius Loyd, Minneapolis, Minnesota (pro se appellant)

Lori Swanson, Attorney General, Jacob Fischmann, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Peterson, Presiding Judge; Reilly, Judge; and Reyes, Judge.

## UNPUBLISHED OPINION

**REILLY**, Judge

Appellant challenges the district court's order sustaining the revocation of his driver's license, contending that his refusal to take a blood or urine test was reasonable because he already passed a breath test. Because appellant's refusal was unreasonable, we affirm.

# FACTS

On April 13, 2013, at approximately 3:50 a.m., Brooklyn Park Police Officer Jamie Angerhofer arrived at a townhome complex to investigate a noise complaint. After arriving at the townhome complex, he saw a car idling in the parking lot. The car was not in a parking spot and had its headlights on. Appellant Rufus Loyd was sitting in the driver's seat. Officer Angerhofer stopped the squad car alongside Loyd's car and attempted to make contact with him. Loyd's window was partially down, but Loyd did not respond.

Officer Angerhofer then parked the squad car behind Loyd's car and activated the emergency lights. Loyd exited his car and placed his hands over his face. Officer Angerhofer approached Loyd's car and attempted to talk to him. Loyd placed one of his hands in his pocket and Officer Angerhofer asked him to remove his hand from his pocket. Loyd did not respond to the officer nor did he follow the officer's directions. Eventually, Officer Angerhofer and his partner physically removed Loyd's hand from his pocket. While patting Loyd down, Officer Angerhofer smelled the odor of an alcoholic beverage coming from Loyd and observed an empty beer can in the car. During this time, Loyd kept pulling away from the officers and attempted to lean against his car.

Based on his observations, Officer Angerhofer suspected that Loyd may be impaired and asked Loyd to perform field sobriety tests. The first test administered was the horizontal gaze nystagmus (HGN) test. Officer Angerhofer explained the HGN test to Loyd. While administering the test, Officer Angerhofer noticed that Loyd's eyes were watery and that he had pinpointed pupils. The pinpointed pupils seemed unusual to

2

Officer Angerhofer because it was dark outside. During the HGN test, Loyd continued to stare straight forward and did not follow the tip of Officer Angerhofer's pen as instructed.

Next, Officer Angerhofer asked Loyd to complete the walk-and-turn test. Officer Angerhofer explained and demonstrated the test to Loyd, but it appeared that Loyd did not understand the instructions. After asking him to place his right foot in front of his left foot, Loyd did not move his feet. Because Loyd would not respond to Officer Angerhofer's questions or demonstrations, he was arrested for driving while impaired. Officer Angerhofer searched Loyd's person and performed a property inventory search of the car before taking Loyd to the police department. The search revealed no drugs or drug paraphernalia.

Officer Angerhofer drove Loyd to the Brooklyn Park Police Department and read him the motor vehicle implied-consent advisory. Loyd agreed to a breath test, and the first breath-test sample reported an alcohol concentration of .03. Officer Angerhofer testified that, based on his training and experience, he believed Loyd was under the influence of other substances due to him falling into his vehicle, his unsteadiness, his inability to comprehend and answer simple instructions, and his pinpointed pupils. Officer Angerhofer opined that pinpointed pupils can be indicative of illegal substances and that the breath test cannot detect illegal substances. Officer Angerhofer testified that he is not a trained drug-recognition expert and that he did not attempt to have a drug-recognition expert evaluate Loyd.

Officer Angerhofer read a second implied-consent advisory for hazardous or controlled substances to Loyd, and offered Loyd the choice of taking a blood or urine

3

test. Loyd requested to speak with an attorney, and a telephone was made available to him. Loyd acknowledged that he understood the advisory, and Loyd declined to take either test. Officer Angerhofer asked Loyd what his reason for refusing was and Loyd did not respond but, instead, shrugged his shoulders. Respondent commissioner of public safety subsequently revoked Loyd's driver's license and impounded his license plates.

At the October 29, 2013 implied-consent hearing, Loyd argued that based on the circumstances and the .03 breath test, probable cause did not exist to believe that Loyd was under the influence of a controlled substance, thus rendering the second chemical test illegal. In determining whether probable cause existed for the second chemical test, the district court found:

> The facts in the present case reflect that the officer observed that Mr. Loyd was falling into his vehicle, he was unsteady on his feet, there was an odor of alcohol, he observed an open beer can on the passenger front seat. Mr. Loyd, the officer testified, didn't follow instructions, including keeping his hands out of his pocket when instructed to do so, and that he appeared unable to respond to questions. . . . The officer testified that he believed that Mr. Loyd was impaired for all of the reasons stated, plus the fact that his pupils were pinpointed. . . .
>
> It was therefore reasonable that he had probable cause to believe that that was the case and that justified the second test under 169A.51, subdivision 4. The Court therefore denies the motion to rescind.

Loyd appeals the district court's order sustaining the revocation of his driving privileges.

**D E C I S I O N**

A law-enforcement officer may request that a driver submit to a chemical test of the person's blood, breath, or urine, if the officer has "probable cause to believe the person was driving, operating, or in physical control of a motor vehicle" while impaired. Minn. Stat. § 169A.51, subd. 1(b) (2012). But if a person refuses to submit to chemical testing, "a test must not be given." Minn. Stat. § 169A.52, subd. 1 (2012); *see also State v. Brooks*, 838 N.W.2d 563, 571 (Minn. 2013) ("If a driver refuses the test, the police are required to honor that refusal and not perform the test."), *cert. denied*, 134 S. Ct. 1799 (2014). A consequence of such a refusal, however, is that the commissioner of public safety will revoke the person's driver's license. Minn. Stat. § 169A.52, subd. 3(a). "It is an affirmative defense for the petitioner to prove that, at the time of the refusal, the petitioner's refusal to permit the test was based upon reasonable grounds." Minn. Stat. § 169A.53, subd. 3(c).

"Probable cause to arrest a person for DWI exists when the facts and circumstances available at the time of arrest reasonably warrant a prudent and cautious officer to believe that an individual was driving under the influence." *Reeves v. Comm'r of Pub. Safety*, 751 N.W.2d 117, 120 (Minn. App. 2008). A determination of probable cause is a mixed question of law and fact. *Groe v. Comm'r of Pub. Safety*, 615 N.W.2d 837, 840 (Minn. App. 2000), *review denied* (Minn. Sept. 13, 2000). Once the facts have been found we must apply the law to determine if probable cause exists. *Id.* In reviewing a probable-cause determination, we consider whether the police officer had a substantial basis for concluding that probable cause existed at the time he or she invoked

5

the implied-consent law. *Id.* In doing so, this court examines the totality of the circumstances. *Eggersgluss v. Comm'r of Pub. Safety*, 393 N.W.2d 183, 185 (Minn. 1986). We give deference to the officer's experience and judgment. *Delong v. Comm'r of Pub. Safety*, 386 N.W.2d 296, 298 (Minn. App. 1986), *review denied* (Minn. June 13, 1986).

> Minnesota law allows a peace officer to administer a blood or urine test
>
>> even after a breath test has been administered if there is probable cause to believe that:
>> (1) there is impairment by a controlled substance or a hazardous substance that is not subject to testing by a breath test; or
>> (2) a controlled substance listed in Schedule I or II or its metabolite, other than marijuana or tetrahydrocannabinols, is present in the person's body.

Minn. Stat. § 169A.51, subd. 4 (2012). The district court found that the officer reasonably believed that Loyd was under the influence of drugs. We agree.

In *State v. Prax*, we held that probable cause existed to arrest the appellant for driving while impaired even after he blew a .00 on the preliminary breath test. 686 N.W.2d 45, 49 (Minn. App. 2004), *review denied* (Minn. Dec. 14, 2004). In upholding the probable-cause determination, we concluded that the appellant's sweating, dilated pupils, anxious and fidgety behavior, body tremors, elevated pulse, and swaying during one of the field sobriety tests supplied the officer with probable cause for an additional chemical test. *Id.*; *see State v. Hegstrom*, 543 N.W.2d 698, 700, 702 (Minn. App. 1996) (holding that probable cause existed for arresting a driver for driving while under the influence of a controlled substance when the driver appeared distracted and "out of it,"

had severely constricted pupils, and demonstrated inattentive driving), *review denied* (Minn. Apr. 16, 1996); *see also State v. Kier*, 678 N.W.2d 672, 678 (Minn. App. 2004) ("An officer needs only one objective indication of intoxication to constitute probable cause to believe a person is under the influence.").

Here, the record shows that Loyd exhibited multiple indications of impairment. Officer Angerhofer testified that Loyd did not respond to his initial questions, covered his face with his hands when he exited his car, would not respond to additional questioning, was unsteady on his feet and fell back into his car, had watery eyes and pinpointed pupils, was unable to follow instructions during the HGN test, and was unable to follow instructions and complete the walk-and-turn test. On these facts, the district court properly found that the officer had a substantial basis for finding probable cause to believe that appellant was driving while under the influence of a controlled substance, justifying the officer's request that he take an additional chemical test. Accordingly, under the implied-consent law, Loyd's refusal to submit to a second test was unreasonable.

Loyd also argues that the officer's failure to tell him the results of the breath test and his failure to explain why he had to take an additional test provided sufficient reasons for refusal. The record refutes these arguments. The record shows that Officer Angerhofer read a second implied-consent advisory to Loyd regarding the second test. This advisory stated that Loyd was required to take a test to determine whether he was "under the influence of hazardous or controlled substances." Officer Angerhofer supplied a telephone to Loyd after he requested to consult with an attorney. Moreover,

7

we have held that a police officer is not obligated to disclose the results of an initial breath test sample before requesting a second sample. *See O'Brian v. Comm'r of Pub. Safety*, 552 N.W.2d 760, 762 (Minn. App. 1996) (affirming the district court's finding that appellant's refusal was unreasonable when he refused to give a second breath sample on the ground that he was not told the result of the first sample).

Lastly, Loyd challenges the initial stop, withholding of evidence, his *Miranda* rights, and the 911 call. At the hearing, however, the only issue presented to the district court was whether probable cause existed for the second chemical test. Generally, we will not consider matters not argued to and considered by the district court. *Thiele v. Stitch*, 425 N.W.2d 580, 582 (Minn. 1988). Although appellate courts can make exceptions for pro se criminal appellants, *Dale v. State*, 535 N.W.2d 619, 624 (Minn. 1995), Loyd provides no legal analysis for his argument and cites to evidence not in the record. *See State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection."). Because we cannot discern any obvious prejudicial error, we decline to consider Loyd's additional arguments on appeal.

**Affirmed.**