*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0358**

Raymond Scott Henry, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed December 5, 2016
Affirmed
Johnson, Judge**

Benton County District Court
File No. 05-CV-15-2194

Robert D. Stoneburner, Stoneburner Law Office, Paynesville, Minnesota (for appellant)

Lori Swanson, Attorney General, Frederic J. Argir, Dominic J. Haik, Assistant Attorneys General, St. Paul, Minnesota (for respondent)

Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Johnson, Judge.

# UNPUBLISHED OPINION

**JOHNSON**, Judge

The commissioner of public safety revoked Raymond Scott Henry's driver's license after he was arrested for driving while impaired and refused to submit to a breath test. Henry petitioned for rescission of the revocation on the grounds, among others, that his limited right to consult with an attorney was not vindicated, that he did not refuse to submit

to a breath test, and that, if he did refuse, his refusal was reasonable. The district court denied the petition. We affirm.

## FACTS

On October 17, 2015, at 1:44 a.m., Deputy Cody Eisenschenk of the Benton County Sheriff's Office stopped a vehicle that was driven by Henry. Deputy Eisenschenk arrested Henry for driving while impaired (DWI). At the Benton County jail, Deputy Eisenschenk read Henry the implied-consent advisory in the alcohol-testing room. Henry told Deputy Eisenschenk that he wished to contact an attorney. Henry requested access to his cellular telephone so that he could find the telephone number of a person he described as "my attorney." After some discussion, Deputy Eisenschenk granted the request. Deputy Eisenschenk then escorted Henry to a separate room with a desk, a telephone, and telephone directories. Henry used the jail telephone to call his attorney and left a voice-mail message.

After Henry left the voice-mail message for his attorney, Deputy Eisenschenk told Henry that he could use the telephone directories to contact other attorneys. Henry did not attempt to do so. After further discussion with Deputy Eisenschenk, Henry stood up as if he was ready to leave the room. Henry was in the room with the jail telephone and telephone directories for approximately four minutes.

Deputy Eisenschenk escorted Henry back to the alcohol-testing room and asked him to submit to a breath test. Henry initially responded by asking multiple questions. He later said repeatedly that he would like to speak with an attorney. Deputy Eisenschenk informed Henry repeatedly that he would need to make a decision to either submit to a breath test or

2

not.  Deputy Eisenschenk advised Henry that an unreasonable delay in making a decision would be deemed a refusal to submit to a breath test.  Deputy Eisenschenk asked Henry several times whether he would submit to a breath test, but Henry never answered the question.  Eventually Deputy Eisenschenk said that he would ask Henry one more time whether he would submit to a breath test.  Henry again did not answer in the affirmative or the negative but, rather, indicated that he wanted to consult with an attorney.  Deputy Eisenschenk deemed Henry to have refused to submit to a breath test.

The commissioner revoked Henry's driver's license.  Henry petitioned the district court for judicial review of the revocation.  In his petition, he claimed that his limited right to counsel was not vindicated, that he did not refuse to submit to chemical testing, and that, if he did refuse, any such refusal was reasonable.  The district court conducted a hearing at which the commissioner called Deputy Eisenschenk as a witness and introduced two exhibits: a copy of the implied-consent advisory that the deputy read to Henry and a video-recording of the interactions between the deputy and Henry at the jail.  Henry testified and introduced a summary of the evidence reflected in the video-recording pursuant to rule 1006 of the Minnesota Rules of Evidence.

The district court issued a written order in which it denied Henry's petition and sustained the revocation of his driver's license.  The district court reasoned that Henry's limited right to counsel was vindicated, that he refused to submit to a breath test, and that his refusal was not reasonable.  Henry appeals.

## D E C I S I O N

### I. Limited Right to Counsel

Henry first argues that the district court erred by concluding that his limited right to counsel was vindicated. Specifically, Henry argues that his limited right to counsel was not vindicated because he was allowed only four minutes in which to contact an attorney.

A driver who is arrested for DWI has a limited right to consult with an attorney before deciding whether to submit to chemical testing. *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991) (citing Minn. Const. art. I, § 6). The driver's limited right to consult with an attorney before testing is "vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Id.* (quotation omitted). This court applies a clear-error standard of review to a district court's factual findings and a *de novo* standard of review to a district court's conclusion as to whether a driver's limited right to counsel was vindicated. *Mell v. Commissioner of Pub. Safety*, 757 N.W.2d 702, 712 (Minn. App. 2008); *State v. Christiansen*, 515 N.W.2d 110, 112 (Minn. App. 1994), *review denied* (Minn. June 15, 1994).

In deciding whether a driver's limited right to counsel was vindicated, a court generally should consider the totality of the circumstances surrounding the implied-consent advisory and the driver's opportunity to consult with an attorney. *Mell*, 757 N.W.2d at 713; *Groe v. Commissioner of Pub. Safety*, 615 N.W.2d 837, 841 (Minn. App. 2000), *review denied* (Minn. Sept. 13, 2000). This court's caselaw has recognized a few factors that are relevant to a totality-of-the-circumstances analysis: whether the driver made a

4

good-faith and sincere effort to reach an attorney, the time of day when the driver attempted to contact an attorney, and the length of time the driver had been under arrest when his consultation time was ended. *See Palme v. Commissioner of Pub. Safety*, 541 N.W.2d 340, 344-45 (Minn. App. 1995), *review denied* (Minn. Feb. 27, 1996); *Kuhn v. Commissioner of Pub. Safety*, 488 N.W.2d 838, 842 (Minn. App. 1992), *review denied* (Minn. Oct. 20, 1992). If a driver's challenge is based solely on the amount of time allowed for contacting an attorney, the inquiry into whether the driver made a good-faith and sincere effort to reach an attorney is a threshold issue. *See Gergen v. Commissioner of Pub. Safety*, 548 N.W.2d 307, 309 (Minn. App. 1996), *review denied* (Minn. Aug. 6, 1998).

In this case, the district court determined the threshold issue as follows:

> Petitioner failed to make a good faith effort to contact an attorney, because he voluntarily stopped trying after he called the first attorney and left a voice message. . . . The jail video clearly shows Petitioner never making any attempts to contact other attorneys. Deputy Eisenschenk was given no indication that Petitioner wanted any more time, so he asked Petitioner if he was done contacting attorneys. Petitioner responded by restacking the directories and standing up to leave the room. Petitioner never asked Deputy Eisenschenk for more time. . . . Petitioner failed to meet the good faith threshold required to determine if he was given a reasonable amount of time to contact an attorney. Therefore, his right to consult with an attorney was vindicated.

The district court's analysis is supported by the district court's findings of fact, the evidentiary record, and the applicable caselaw. Deputy Eisenschenk testified that he provided Henry with a telephone and telephone directories, that Henry made only one call, and that Henry communicated to him that he did not wish to make any additional calls to other attorneys. The deputy's testimony is corroborated by our review of the video-

5

recording that was received into evidence at the hearing. The facts of this case are similar to the facts of other cases in which we concluded that a driver's limited right to counsel was vindicated. For example, in *Gergen*, the driver made one unsuccessful attempt to call an attorney before saying that "he was done looking for an attorney." 548 N.W.2d at 310. We concluded that the district court did not err by denying Gergen's petition on the ground that he "did not make a good faith effort to contact an attorney." *Id.* Similarly, in *Mell*, the driver made no attempt to call an attorney, walked away from the telephone, and "nodded his head" when asked if he was done trying to contact an attorney after only three minutes. 757 N.W.2d at 713. We concluded that the district court did not err by finding that the driver ceased his good-faith effort to contact an attorney. *Id.* Similarly, Henry ceased engaging in a good-faith and sincere effort to contact an attorney before Deputy Eisenschenk asked him to submit to a breath test. Accordingly, Henry cannot satisfy the threshold issue for a challenge to the amount of time that he was given to consult with an attorney. *See Gergen*, 548 N.W.2d at 309-10.

Henry nonetheless contends that, even if he chose to not call more than one attorney when he was given the opportunity, he changed his mind shortly thereafter and should have been permitted to contact other attorneys at that time. Henry cites *State v. Slette*, 585 N.W.2d 407 (Minn. App. 1989), in which this court stated that "officers should recognize the withdrawal of a DWI arrestee's initial waiver of the right to consult with counsel when the change of mind is immediate and does not interfere with police officers' processing of a case or their ability to administer [a breath] test." *Id.* at 409. Henry cannot rely on *Slette* because the case is distinguishable, for at least three reasons. First, the defendant in *Slette*

6

waived his right to consult with an attorney without making any telephone calls. *Id.* at 408. But Henry exercised his right to contact an attorney and chose to call only one attorney. Second, Henry's renewed requests to consult with an attorney did not occur immediately after he voluntarily terminated his opportunity to use the jail telephone and telephone directories. Rather, he did not request another opportunity to consult with an attorney until he was brought to the testing room and was read the implied-consent advisory three additional times. Third, Henry did not expressly state that he wanted to contact an attorney other than the attorney for whom he already had left a message. Thus, it appears that he wanted Deputy Eisenschenk to allow him to wait until his attorney returned his call. But the caselaw is clear that a driver who has been arrested for DWI "cannot be permitted to wait indefinitely for a call that may never come." *Palme*, 541 N.W.2d at 345. For that reason, Henry's last-minute request to consult with an attorney, if granted, would have interfered with Deputy Eisenschenk's "processing" of Henry's case and the deputy's "ability to administer [a breath] test." *See Slette*, 585 N.W.2d at 409. Accordingly, Henry was not entitled to change his mind about continuing to try to consult with an attorney.

Thus, the district court did not err by concluding that Henry's limited right to counsel was vindicated.

## II. Finding of Refusal

Henry also argues that the district court erred by finding that he refused to submit to a breath test. Specifically, Henry argues that he "did not verbally refuse at any point in the testing process" and did not "refuse testing by his conduct" but "consistently . . . reiterated his desire to consult with an attorney prior to making his testing decision."

7

A law-enforcement officer may request that a driver submit to chemical testing if the officer has "probable cause to believe the person was driving, operating, or in physical control of a motor vehicle" while impaired. Minn. Stat. § 169A.51, subd. 1(b) (2014). "A driver has a duty to comply reasonably with the administration of a test, and failure to do so constitutes a refusal." *Sigfrinius v. Commissioner of Pub. Safety*, 378 N.W.2d 124, 126 (Minn. App. 1985). "A driver may communicate refusal to take a test by either words or acts." *Anderson v. Commissioner of Pub. Safety*, 379 N.W.2d 678, 681 (Minn. App. 1986). In other words, a driver may be deemed to have refused chemical testing by his or her actions, even in the absence of an oral refusal. *Busch v. Commissioner of Pub. Safety*, 614 N.W.2d 256, 259-60 (Minn. App. 2000). "[R]efusal to submit to chemical testing includes any indication of actual unwillingness to participate in the testing process, as determined from the driver's words and actions in light of the totality of the circumstances." *State v. Ferrier*, 792 N.W.2d 98, 102 (Minn. App. 2010) (affirming conviction of criminal refusal to submit to chemical testing), *review denied* (Minn. Mar. 15, 2011). This court applies a clear-error standard of review to a district court's finding of fact that an arrested driver has refused to submit to chemical testing. *Stevens v. Commissioner of Pub. Safety*, 850 N.W.2d 717, 722 (Minn. App. 2014).

In this case, the district court found that Henry's "conduct frustrated the implied consent process and amounted to a refusal to test, despite him never verbally refusing chemical testing." The district court noted that Henry initially asked questions of Deputy Eisenschenk about the potential consequences of his decision to submit or refuse and later said that he wanted to consult with an attorney. The district court also noted that when

8

Deputy Eisenschenk clearly gave Henry one last chance to make a decision, Henry refused to answer the question. The district court's finding is supported by the evidentiary record. After Henry was escorted to the testing room, Deputy Eisenschenk asked him at least seven times if he would submit to a breath test. Henry consistently avoided the question. Henry repeatedly said that he wanted to consult with an attorney. But Henry previously had an opportunity to contact an attorney and voluntarily terminated the opportunity. On multiple occasions, Deputy Eisenschenk warned Henry and reread the portion of the implied-consent advisory that states that an unreasonable delay would be deemed a refusal to submit to a test.

The facts of this case are very similar to the facts of *Linde v. Commissioner of Pub. Safety*, 586 N.W.2d 807 (Minn. App. 1998), *review denied* (Minn. Feb. 18, 1999), in which an arrested driver avoided a law-enforcement officer's request to submit to chemical testing by saying that he first wanted to speak with an attorney. *Id.* at 808-09. The officer informed the driver that he would need to make an uncounseled decision and reread a portion of the implied-consent advisory, but the driver responded by saying, "Not until I talk to my lawyer." *Id.* at 808. This court affirmed the district court's finding that the driver refused to submit to chemical testing. *Id.* at 810; *see also Anderson*, 379 N.W.2d at 681 (concluding that driver refused test by being evasive and nonresponsive).

Thus, the district court did not err by finding that Henry, by his conduct, refused to submit to chemical testing.

9

### III. Reasonableness of Refusal

Henry argues in the alternative that, if the district court properly found that he refused chemical testing, his refusal was reasonable. He contends that any refusal by him would be reasonable "because he clearly, promptly and repeatedly expressed renewed interest in" consulting with an attorney before making a decision whether to submit to chemical testing.

A person seeking the rescission of the revocation of a driver's license may prevail by proving that, "at the time of the refusal, the petitioner's refusal to permit the test was based upon reasonable grounds." Minn. Stat. § 169A.53, subd. 3(c) (2014). Caselaw recognizes that reasonable grounds may exist "if the police have misled a driver into believing a refusal was reasonable or if the police have made no attempt to explain to a confused driver his obligations." *Frost v. Commissioner of Pub. Safety*, 401 N.W.2d 454, 456 (Minn. App. 1987). This court applies a clear-error standard of review to a district court's factual finding as to whether a refusal was reasonable. *See id*.

The district court rejected Henry's argument by reasoning that he did not have a right to wait for a particular attorney to return his call before deciding whether to submit to chemical testing. The district court also noted that Henry's limited right to counsel previously had been vindicated. The district court is correct that Henry was obligated to make a decision without further delay. *See Linde*, 586 N.W.2d at 810. There is no legal authority to support Henry's argument that it was reasonable for him to persist in declining to answer the deputy's question whether he would submit to chemical testing. *See id.* (concluding that driver did not reasonably refuse to submit to blood or urine test because

10

he was offended by circumstances of his arrest and was confused); *Palbicki*, 347 N.W.2d at 514 (concluding that driver did not reasonably refuse to submit to blood test because he questioned nurse's credentials). Furthermore, there is nothing in the record to suggest that Henry was either misled or confused by Deputy Eisenschenk. *See Frost*, 401 N.W.2d at 456. Deputy Eisenschenk patiently read and reread the implied-consent advisory to Henry numerous times.

Thus, the district court did not err by finding that Henry's refusal was not reasonable.

Before concluding, we note that Henry briefed an additional argument that has been waived. Henry argued in his brief, which was filed in April 2016, that the test-refusal statute is unconstitutional. Two months later, the United States Supreme Court issued its opinion in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). At oral argument in September 2016, Henry's attorney stated that he was abandoning the constitutional challenge to the test-refusal statute. Therefore, we need not consider that issue.

In sum, the district court did not err by denying Henry's petition and sustaining the revocation of his driver's license.

**Affirmed.**