Alan Mark WARNER, Petitioner,
Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C5–92–1389.

Court of Appeals of Minnesota.

April 6, 1993.

Review Denied May 28, 1993.

T. Oliver Skillings, Skillings Law Office, Bloomington, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Nancy J. Bode, Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by LANSING, P.J., and SCHUMACHER and FOLEY,* JJ.

## OPINION

DANIEL F. FOLEY, Judge.

Alan Mark Warner appeals from the trial court order sustaining the revocation of his driver's license. We affirm.

## FACTS

Officer Jay A. Henthorne was on duty February 2, 1992 when he observed a collision between two automobiles. Appellant was the driver of one of the vehicles. Henthorne asked to see appellant's driver's

license, and noticed that appellant wore a hearing aid. When the officer tried to talk to appellant and calm him down, he testified that it seemed as if appellant did not understand him. He assumed appellant was deaf. Another officer who had since arrived on the scene wrote a note to appellant asking if he knew sign language. Appellant shook his head no. When Henthorne slowly asked appellant if he could read lips, appellant pointed to his lips and shook his head "yes." He said the word "deaf."

The officer, who noticed indicia of intoxication, asked appellant to take the horizontal gaze nystagmus test. Appellant followed the instructions, and from the results of the test the officer concluded appellant was under the influence of alcohol. He also asked appellant to take a preliminary breath screening test. He slowly explained the directions, and then demonstrated. He asked appellant if he understood, and he shook his head "yes." Appellant took the test with the result of "fail." The test is calibrated to fail at an alcohol concentration of .11.

The officer placed appellant under arrest for DWI. He brought him to the booking room at the Richfield Police Department. The officer considered trying to get an interpreter, but did not know how to do so. He asked his sergeant for assistance. He asked whom appellant lived with, to attempt to find an interpreter, but appellant said he lived alone.

The officer then gave appellant the implied consent advisory. He had appellant read the advisory himself. He then read each question again several times before asking appellant if he understood. Appellant shook his head "yes" on each one.

The officer advised appellant he had a right to consult with an attorney before submitting to a test. Appellant responded that he wished to do so, and the officer made a telephone book available to him. As appellant looked through the phone book, the officer testified he felt they

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn.

Const. art. VI, § 10.

should contact a public defender. The officer then called one and explained the situation. The public defender thought there would be no problem if she asked questions, the officer wrote the questions down, and appellant responded by shaking his head yes or no as to whether he understood.

After relaying the questions in this manner, the officer offered appellant a breath test, writing the offer down. Appellant shook his head yes. The final reported value of the test showed an alcohol concentration of .15. Appellant's driver's license was revoked pursuant to the implied consent law.

Appellant offered testimony at the hearing through a sign language interpreter. He is 34 years old, and has graduated from high school. After high school, he attended a vocational school and was trained as a baker. While in high school, he had tutors who helped him with various subjects in sign language. He also testified he could read well.

Appellant testified that after his accident, when the officer asked him if he knew sign language and showed him a piece of paper, he did not understand what he was asking. He did not remember talking to an attorney or having an attorney called for him. He felt he needed an interpreter, but had neither an interpreter nor a telephone with a telecommunication device.

Appellant explained that he understands his immediate family by lip reading. He can understand his extended family if they talk slowly. To communicate with good friends who hear, he usually writes notes. He may understand through lip reading if the person talks slowly, but not if the person talks fast. Appellant testified that on the evening of the accident, he did not understand what the officer was writing and asking him, and he was very confused.

The trial court sustained the revocation of appellant's driver's license. Warner appeals.

## ISSUES

I. Were the trial court's findings of fact clearly erroneous?

II. Did the failure to provide appellant, who is deaf, with an interpreter and telecommunication equipment require rescission of the driver's license revocation?

III. Was appellant's right to counsel violated?

## ANALYSIS

### I.

The trial court made findings of fact which appellant challenges. It determined that a means of communication had been established between appellant and the officer. Appellant cites his testimony that he did not understand, as well as certain responses to written questions. However, appellant also testified he can read well, and he was able to respond and follow directions at the scene and the police station. The trial court ruling is not clearly erroneous. *See State, Dep't of Highways v. Beckey,* 291 Minn. 483, 487, 192 N.W.2d 441, 445 (1971).

Appellant also challenges the determination that the officer attempted but was unable to locate an interpreter. The officer asked whom appellant lived with, to attempt to find an interpreter, but appellant responded that he lived alone. The officer also asked his supervisor for assistance. No telephone equipment accessible to deaf individuals was available at the police department. The trial court's determination on these facts is not clearly erroneous.

### II.

Appellant argues that he was entitled to an interpreter at the accident scene and when the implied consent law was invoked. He contends failure to provide him with an interpreter and telecommunication equipment requires rescission of the license revocation.

A person who drives a motor vehicle within the state consents to a chemical test to determine alcohol concentration. Minn. Stat. § 169.123, subd. 2(a) (Supp.1991). At the time a test is requested, the person shall be informed of the implied consent

advisory, Minn.Stat. § 169.123, subd. 2(b) (Supp.1991). While making an interpreter available is desirable, it should not interfere with the evidence gathering purposes of the implied consent law. *Yokoyama v. Commissioner of Pub. Safety*, 356 N.W.2d 830, 831 (Minn.App.1984). Appellant here understood the field sobriety tests, which he took and failed. He understood and consented to take the breath test, which he also failed.

Appellant argues he was entitled to an interpreter under Minn.Stat. § 611.32, subd. 2 (Supp.1991). Minn.Stat. § 611.32, subd. 2 applies to criminal cases, and the implied consent proceeding is civil in nature. Further, appellant's position that the statute requires an interpreter at the scene of the accident does not comport with the meaning or purpose of the law. Such a requirement would be impractical to implement. The officer's conduct was reasonable, and no civil rights violations occurred. Further, appellant, while having a hearing impairment, could read well, and the officer made every reasonable attempt to obtain an interpreter. The officer did not take advantage of appellant, but instead tried to help him. The fact that an interpreter was not available does not impair the validity of the revocation. Appellant's concerns are better addressed to the legislature.

### III.

Appellant also asserts his right to counsel was violated. The police officer advised appellant that he had the right to consult with counsel prior to testing. *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 833 (Minn.1991). Appellant indicated he wished to assert that right. The officer obtained a public defender for appellant, and with the public defender's consent, relayed the public defender's questions to appellant through writing.

Appellant first asserts that he did not have adequate assistance of counsel because he did not know he was talking to counsel. However, the trial court found that appellant conferred with an attorney through written exchange of questions and answers, and this determination is not clearly erroneous.

The next question is whether the exchange which took place satisfied the limited right to counsel recognized in *Friedman*. The supreme court recently ruled that the limited right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given reasonable time to contact and talk with counsel. It held that the arrestee's rights will be sufficiently protected by the subsequent exclusion of any overheard statements or any fruits of those statements. *Commissioner of Pub. Safety v. Campbell*, 494 N.W.2d 268, 269–70 (Minn. 1992). A similar rule applies here. The officer attempted to provide the driver with his rights as best he could, and acted reasonably. Appellant could have subpoenaed the attorney if the officer's testimony was challenged.

Appellant also discusses issues regarding his right to additional testing being denied, *see* Minn.Stat. § 169.123, subd. 3, and the Americans With Disabilities Act, 42 U.S.C.A. §§ 1213112134 (West Supp.1992). Appellant did not raise these issues below and they will not be addressed for the first time on appeal. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 68 n. 2 (Minn.1979).

### DECISION

The order of the trial court sustaining the revocation is affirmed.

Affirmed.