STATE of Minnesota, Appellant,

v.

**Kendall Lee KAIL, Respondent.**

No. A08–1081.

Court of Appeals of Minnesota.

Feb. 3, 2009.

Lori Swanson, Attorney General, and Katrina E. Joseph, Martin J. Costello, Hughes & Costello, St. Paul, MN, for appellant.

Benjamin S. Houge, Benjamin S. Houge Law Offices, Stillwater, MN, for respondent.

Considered and decided by CONNOLLY, Presiding Judge; ROSS, Judge; and BJORKMAN, Judge.

## OPINION

ROSS, Judge.

This appeal requires us to decide whether the state must provide an interpreter to assist during the arrest of, and implied consent advisory discussion with, a suspected drunk driver who cannot hear and speak but who can read and write. After the state charged Kendall Lee Kail with driving while impaired, Kail moved to suppress evidence related to his arrest and to his consent to take a breath test, arguing that the officer's failure to obtain a sign-language interpreter violated his statutory and constitutional rights. The district court granted the motion on statutory grounds and dismissed the charges. Because the interpreter statute does not require assigning an interpreter to a person whose speech-and-hearing disability does not prevent him from fully understanding the arrest and the advisory discussion, we reverse and remand.

## FACTS

In the early-morning hours of June 1, 2007, Saint Anthony Police Officer Daniel Johnson watched an Oldsmobile weave within its own lane and follow another car

too closely. He also noticed that the car's windows were unlawfully tinted.

Officer Johnson stopped and approached the car and asked the driver for his license and proof of insurance. He quickly discovered that the driver, Kendall Lee Kail, cannot hear or speak. Officer Johnson communicated with Kail initially through gestures, but soon through handwritten notes. Kail smelled of alcoholic beverages and had watery and bloodshot eyes, so Officer Johnson directed Kail with specific written instructions to perform field sobriety tests. Because Kail failed the tests, Officer Johnson arrested him for impaired driving, informing Kail in writing. Officer Johnson offered Kail the opportunity to contact a friend to assist him. Despite attempts by pager, Kail found no one to help.

Officer Johnson took Kail to the Saint Anthony police station to administer the implied consent advisory and, potentially, a breath test. Officer Johnson and Kail continued to communicate through writing at the police station. Throughout the process, Officer Johnson repeatedly asked Kail in writing if he understood what was being asked of him, and Kail consistently replied that he did.

Officer Johnson directed Kail to read the implied consent advisory. Kail read it. Officer Johnson instructed Kail to indicate that he understood the advisory by initialing its relevant passages. Kail did so, and he wrote that he wished to contact an attorney. When Officer Johnson wrote asking if Kail knew how to contact an attorney, Kail responded in writing that he did, and he identified the attorney whom he wanted to contact. Officer Johnson offered to assist Kail by speaking to the attorney by telephone, but he wrote that Kail had "to pick the attorney and dial the number." After several attempts, they were unable to reach Kail's attorney by text messages or by directly dialing. They waited 15 minutes for Kail's selected attorney to respond, but he did not. Kail then gave his written consent, and Officer Johnson administered the breath test. The test reflected an alcohol concentration of .09. The state later charged Kail with fourth-degree driving while impaired. Minn.Stat. § 169A.20, subd. 1(1), (5) (2006).

Kail successfully moved the district court to suppress all evidence because Officer Johnson did not provide him with an interpreter to accommodate his speech-and-hearing impairment. The district court found that Kail is unable "to hear the spoken word or to speak English and his primary mode of communication is American Sign Language." But it also found that Kail "is able to read and write in English" and noted that "[w]ritten communication is a way to communicate with a deaf person, provid[ed] that the deaf person knows English ... and can read." The district court wondered, "How does a deaf person speak to a lawyer on the phone?" It therefore concluded that Officer Johnson's failure to secure a sign-language interpreter violated Kail's rights under Minnesota Statutes section 611.32. It suppressed all evidence and dismissed the impaired-driving complaint.

The state appeals.

## ISSUE

Is a person who can communicate by reading and writing during a proceeding conducted in writing entitled to a sign-language interpreter under Minnesota Statutes section 611.32?

## ANALYSIS

■ The state challenges the district court's order suppressing the evidence obtained from the traffic stop and breath

test. When the state appeals a pretrial suppression order, it must prove that the suppression has a critical impact on the prosecution before we will consider whether the decision to suppress the evidence was erroneous. *State v. Scott,* 584 N.W.2d 412, 416 (Minn.1998). To establish a critical impact, the state must show unequivocally that suppression "reduces the likelihood of a successful prosecution." *Id.* (quotation omitted). The state does not directly argue that the suppression had a critical impact on Kail's prosecution, but the district court suppressed the evidence and dismissed the charges simultaneously, stating that the parties had stipulated that suppression "should also result in the dismissal of the charges." Although the state disputes this characterization of its position, it is apparent from the district court's order that the suppression prevented Kail's prosecution. The suppression therefore had a critical impact on the state's ability to prosecute.

■ This court reviews pretrial orders suppressing evidence de novo to determine whether the district court reached the correct conclusion as a matter of law. *State v. Harris,* 590 N.W.2d 90, 98 (Minn.1999). We therefore independently review the facts. *Id.* The district court concluded that "[t]he failure of the arresting officer to attempt to comply with the clear mandates of [Minnesota Statutes section 611.32] require that those communications obtained after the violation be suppressed pursuant to the Court's supervisory responsibility." The state contends that the district court suppressed the evidence erroneously, arguing that an interpreter was statutorily unnecessary and that Officer Johnson did not otherwise violate Kail's rights.

## I

■ Minnesota's policy is to protect the rights of persons disabled in communications. Minn.Stat. §§ 611.30–.34 (2006). Under the controlling statutes, an interpreter must be appointed when persons disabled in communications are arrested or are the subjects of certain judicial proceedings. Minn.Stat. § 611.32. One is disabled in communications when,

(a) because of a hearing, speech, or other communication disorder, or (b) because of difficulty in speaking or comprehending the English language, [the person] cannot fully understand the proceedings or any charges made against the person, or the seizure of the person's property, or is incapable of presenting or assisting in the presentation of a defense.

Minn.Stat. § 611.31. Implicit in the district court's conclusion that Officer Johnson violated section 611.32 is that Kail is a "person disabled in communications" entitled to an interpreter under the statute. The premise is incorrect.

Section 611.31 establishes that entitlement to an interpreter depends not merely on whether the individual suffers a disability, but on whether a communication disorder or language barrier prevents that person from fully understanding the proceedings. One who fully understands the arrest and postarrest implied consent proceeding despite having hearing and speech deficiencies is not a "person disabled in communication" and is therefore not entitled to an interpreter.

This court has previously indicated that section 611.32 does not guarantee the assigning of an interpreter for deaf motorists arrested for drunken driving. *Warner v. Comm'r of Pub. Safety,* 498 N.W.2d 285, 288 (Minn.App.1993), *review denied* (Minn. May 28, 1993). In *Warner,* a deaf driver challenged his license revocation after an implied consent proceeding. *Id.* at 286–87. The officer in that case had communicated

with the driver through writing, gestures, and lip reading. *Id.* This court concluded that the interpreter statute does not apply when a driver's license is revoked after an implied consent proceeding because an implied consent proceeding is civil in nature. *Id.* at 288. But despite the distinction regarding the criminal nature of this case, the *Warner* court also emphasized that the defendant, "while having a hearing impairment, could read well." *Id.* We noted that the driver "understood the field sobriety tests," and he "understood and consented to take the breath test." *Id.* Our discussion in *Warner* highlighted that the statute requires an interpreter when a person is actually disabled in communications because he cannot understand the proceeding.

This court's treatment of bilingual defendants claiming rights under section 611.32 is instructive. In *State v. Perez,* for example, we held that a Spanish-speaking defendant was not disabled in communication when he also "demonstrated sufficient command of the English language." 404 N.W.2d 834, 839 (Minn.App.1987), *review denied* (Minn. May 20, 1987). We concluded that when the bilingual defendant did not indicate that he misunderstood and "responded appropriately to questions and commands," and when arresting officers "had no reason to believe he did not understand them," an interpreter was not required for the defendant to effectively waive his *Miranda* rights. *Id.*

The district court found that Kail can read and write English, and the record supports the finding. Kail's written responses congruently tracked Officer Johnson's written statements and questions, and when Kail occasionally sought clarification, it reflects no breakdown in communication or a misunderstanding occasioned by Kail's disability. The notes between Officer Johnson and Kail capture only a brief moment of confusion, which Officer Johnson's written response dispelled without an interpreter. The record of their written conversation demonstrates that Officer Johnson communicated with a significant degree of care and concern to assure Kail's understanding, surpassing the clarity that one might expect in an oral discussion between two similarly situated hearing persons in a more typical impaired-driving arrest. Because Kail can and did communicate in writing, the opportunity for precision afforded by written English permitted Officer Johnson to express clearly and directly to Kail without translation through American Sign Language. *See* Michele La Vigne & McCay Vernon, *An Interpreter Isn't Enough: Deafness, Language, and Due Process,* 2003 Wis. L.Rev. 843, 876, 874–78 (discussing differences between English and ASL). The extensive written exchange of communication in the record establishes to our satisfaction that Kail has a clear command of written English and fully understood Officer Johnson's careful communication to him regarding the arrest, his rights, and all particulars related to the alcohol-concentration testing.

The district court's findings contradict its legal conclusion that Kail met the statutory definition of "person disabled in communication." Despite finding that Kail can read and write English and that "[w]ritten communication is a way to communicate with a deaf person, providing that the deaf person knows English ... and can read," the district court impliedly concluded that Kail could not fully understand the proceedings or charges. The district court noted that "[b]ecause English *may be* a second language for many deaf persons, *some* have limited competence in writing and reading English." (Emphasis added.) But the district court did not find that Kail was among that class of impaired persons

with limited competence in the written word, and in fact, it found the opposite.

The statute does not contemplate a per se requirement that any person unable to speak and hear, even if fully competent in written English, is entitled to a sign-language interpreter; rather, it conditions the requirement on the person's capacity to understand. Kail repeatedly and consistently stated in writing that he understood, and he demonstrated his understanding. He gave the arresting officer, and he gives us, no reason to suspect that his inability to speak and hear prevented him from fully understanding every detail communicated to him. Because Kail demonstrated that he fully understood all communication exchanged during his arrest and his implied-consent decision, he was not entitled to an interpreter as a "person disabled in communication" under sections 611.31 and 611.32.

## II

Although the interpreter statute did not require Officer Johnson to obtain an interpreter for Kail, suppression might still be warranted if the failure to do so violated Kail's constitutional rights. The state argues convincingly that Officer Johnson did not violate Kail's constitutional rights.

 A driver has a limited right to counsel under article I, section 6, of the Minnesota Constitution when deciding whether to submit to a breath test. *Linde v. Comm'r of Pub. Safety*, 586 N.W.2d 807, 809 (Minn.App.1998), *review denied* (Minn. Feb. 18, 1999). The right is satisfied if the driver has a reasonable opportunity and time to contact an attorney. *Id.* After a reasonable time, "the driver must make an independent decision regarding testing." *Id.* A police officer may help a deaf driver to contact an attorney by speaking to the driver's attorney by telephone and transcribing the oral communications to the driver. *Warner*, 498 N.W.2d at 288. Whether the opportunity to confer with counsel is reasonable is a question of law. *Linde*, 586 N.W.2d at 809.

Officer Johnson's effort to contact an attorney on Kail's behalf did not offend Kail's constitutional rights. Kail identified his preferred attorney and provided Officer Johnson the telephone number. Kail and Officer Johnson attempted to reach Kail's attorney by telephone through a direct call, text messages, and a voicemail message. When Kail's attorney had not responded after 15 minutes, Kail acknowledged that he did not expect to hear from him.

We do not share the district court's concern that Kail's failure to contact an attorney resulted from the absence of a sign-language interpreter. The district court was troubled by Officer Johnson's effort and rhetorically questioned, "How does a deaf person speak to a lawyer on the phone?" But the relevant question is, how would a deaf person's requests for a response from his lawyer be any more meaningful if made through a sign-language interpreter rather than through a police officer? We see no difference. Getting no response from the attorney, Officer Johnson stated in writing, "[W]e will move on with the process," to which Kail answered, "ok." An interpreter presumably would have translated and relayed the request for a reply phone call in the same manner and gotten the same result. The manner in which a sign-language interpreter might have learned of the request from Kail is immaterial. When completing the implied consent advisory, Kail stated that he did not want to make trouble by refusing the breath test. This accentuates our conclusion that he made an independent decision to submit to the breath test after he was given a reasonable opportunity—unaffected by his speech-and-hearing impairment

or by the lack of an interpreter—to contact an attorney. Kail's constitutional rights were not violated.

## DECISION

Because Kail was not impaired in communication he was not entitled to an interpreter. Because neither the interpreter statute nor Kail's right to an attorney was offended, we reverse the district court's decision to suppress the evidence and its dismissal of charges, and we remand for further proceedings.

**Reversed and remanded.**