*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0443**

State of Minnesota,
Respondent,

vs.

Chad Thomas Karnowski,
Appellant.

**Filed January 30, 2017
Affirmed
Kirk, Judge**

Hennepin County District Court
File No. 27-CR-14-7564

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Peter A. MacMillan, Assistant Crystal City Attorney, MacMillan, Wallace & Athanases, PLLC, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota, Scott M. Flaherty, Special Assistant Public Defender, Andrew P. Leiendecker (certified student attorney), Briggs and Morgan, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Halbrooks, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

On appeal from his convictions of second-degree driving while impaired (DWI) test refusal and third-degree DWI, appellant argues that (1) the district court erred in denying

his motion to dismiss the test-refusal charge because law enforcement failed to provide him with an interpreter; (2) his right to counsel was not vindicated; and (3) there was insufficient evidence to support the jury's finding of guilt on the third-degree DWI charge. We affirm.

**FACTS**

At approximately 1:55 a.m. on February 22, 2014, Police Officer Tracie Lee-Faust of the Crystal Police Department was on routine patrol and observed a vehicle fail to signal before turning. She initiated a traffic stop of the vehicle and made contact with appellant Chad Thomas Karnowski, the driver of the vehicle. Officer Lee-Faust motioned to appellant to roll down his driver's side window, but he did not comply. She observed that appellant appeared dazed and confused and opened the driver's side door to speak with him.

Appellant told Officer Lee-Faust that he was deaf and she observed that he had a hearing aid in his left ear. She asked him if he knew why she had stopped his vehicle, and he replied that he thought it was because of his lights. Officer Lee-Faust was able to converse with appellant by speaking slowly and loudly to him, and she believed that he was attempting to read her lips. Officer Lee-Faust observed an open beer can in a compartment located on the driver's side door. She asked appellant to step out of the vehicle to perform field sobriety tests. After repeated efforts to administer the horizontal gaze nystagmus (HGN) test, Officer Lee-Faust believed appellant was not cooperating. She secured appellant, who resisted, in the back of her squad vehicle and waited for back up.

2

Lieutenant Peter Underthun of the Crystal Police Department arrived on scene and used a notepad to instruct appellant on how to take the HGN test. As Officer Lee-Faust administered the HGN test, she observed indications of impairment and she smelled alcohol on appellant. Officers requested in writing that appellant take a preliminary breath test, and he verbally replied, "You can't make me." At the suppression hearing, Officer Lee-Faust testified that they did not ask appellant to perform the remaining standardized field sobriety tests because she thought that appellant was playing games. Appellant was arrested and brought to the Crystal Police Department.

At the police department, Officer Lee-Faust and Police Officer Kathleen Gomez of the Crystal Police Department administered the Minnesota Motor Vehicle Implied Consent Advisory (ICA) to appellant. Appellant was provided with a written copy of the ICA and a legal pad so the officers could communicate with him in writing as they read him the ICA. Officer Lee-Faust wrote appellant a note stating, "I'm about to read something very important to you. Please read along and answer the questions, which are asked on the sheet." Appellant wrote back, "I am deaf. I want an interpreter." Officer Gomez wrote back, declining his request. She asked him why he could read her notes to him, but could not read the ICA. Appellant responded, "I can read, but I can't hear you."

As Officer Lee-Faust continued to read the ICA, she asked appellant if he understood. Appellant looked away and did not appear to Officer Lee-Faust to be paying attention. He repeatedly let the ICA form drop to the floor. When the officers asked appellant if he wished to consult with an attorney, appellant closed his eyes and shook his head no. On the ICA form, next to the question, "Do you wish to consult with an attorney?"

Officer Gomez wrote, "Yes or no." On the audio recording of the administration of the ICA, Officer Gomez stated, "We have phone books right there, there's a phone right there. You could contact an attorney, I could get you your phone, you can use the computer, whatever you need to do." Officer Gomez testified that she pointed out to appellant the telephone and the computer in the booking room. Officer Gomez asked appellant if he would like to contact an attorney, and she stated, "Yes or no. No? I see you shaking your head . . . that looks to me like a no. . . . Do you wish to consult with an attorney? No is what I'm understanding." The officers concluded that appellant did not wish to consult with an attorney and Officer Gomez circled, "No" on the ICA form. As Officer Gomez continued through the ICA, she lost her place and again asked appellant both orally and in writing if he would like to speak with an attorney. Appellant then wrote, "Call Mason Barland." Mason Barland is a City of Crystal Police Officer, who is not an attorney or interpreter. Officer Gomez replied orally and in writing, "You can. We will not." Appellant did nothing.

The officers asked appellant orally and in writing a total of four times if he would take a breath test. Appellant did not respond and did not pay attention to the ICA form. Officer Gomez wrote to appellant, "With no answer from you – we will need to consider this a refusal." Appellant replied, "ADA law. Look it up." The officers deemed appellant's response as a test refusal. Sometime after the ICA concluded, Officer Lee-Faust wrote on the legal pad informing appellant that his vehicle was being forfeited and that his license was being revoked. Appellant wrote back, "Jade Johnson, my lawyer. I am done talking." Officer Lee-Faust did not contact Johnson.

4

Respondent State of Minnesota charged appellant with one count of second-degree DWI test refusal and one count of third-degree DWI. Appellant moved to suppress and dismiss the test-refusal charge on multiple grounds, including that his right to counsel was not vindicated, that officers failed to properly administer the ICA, and that officers failed to provide an American Sign Language (ASL) interpreter as required under Minn. Stat. § 611.32 (2014).

At the suppression hearing, appellant's mother testified that appellant is a college graduate and that while he is able to read and write in English, he can also lip read, but "it's a very imprecise way to communicate." A letter from Jane Carlstrom, Au.D., CCC-A, appellant's audiologist, was admitted into evidence. The audiologist wrote that with the use of a hearing aid and good visual contact with the speaker, appellant is able to understand some of the conversation. "In order to insure that [appellant] understands everything that is spoken, [he] needs to use a sign language interpreter or needs to see the conversation in writing."

After the hearing, the district court issued an order denying appellant's motion, finding that: (1) appellant's right to counsel was vindicated because he never chose to exercise his right to counsel by telling the officers that he wished to do so; (2) the officers effectively communicated the arrest and post-arrest process to appellant; and (3) appellant did not need the assistance of an interpreter because he was not disabled in communication because he could communicate during his arrest and the ICA process through the use of his hearing aid, lip reading, and reading written English.

5

After a two-day jury trial, the jury found appellant guilty on both counts. The district court sentenced appellant to one year in the county workhouse, with 335 days stayed for four years, and probation. This appeal follows.

**D E C I S I O N**

**I.     The district court did not err in denying appellant's motion to suppress because he was not provided with an interpreter during the implied-consent advisory.**

"Statutory interpretation presents a question of law, which we review de novo." *Johnson v. Comm'r of Pub. Safety*, 756 N.W.2d 140, 143 (Minn. App. 2008), *review denied* (Minn. Dec. 16, 2008). We give due regard to the district court's opportunity to judge the credibility of witnesses, and findings of fact will not be set aside unless clearly erroneous. *Snyder v. Comm'r of Pub. Safety*, 744 N.W.2d 19, 22 (Minn. App. 2008).

Appellant argues that his conviction for second-degree DWI test refusal should be reversed because he was not provided an interpreter during administration of the ICA.[1] "To protect or facilitate the exercise of constitutional rights, it is the express policy in Minnesota to provide qualified interpreters to assist persons in legal proceedings who are handicapped in communication (now referred to as 'disabled in communication')." *State v. Farrah*, 735 N.W.2d 336, 341 (Minn. 2007); *see also* Minn. Stat. § 611.30 (2014). A person is disabled in communication when he: (1) has a "hearing, speech or other

---

[1] For the first time on appeal, appellant argues that the Crystal Police Department's failure to provide him with an interpreter violated his due-process and equal-protection rights. After a careful review of the record, we conclude that appellant forfeited these arguments because he failed to raise them before the district court. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (stating that an appellate court will not decide issues not raised before the district court unless justice requires it and doing so will not unfairly surprise the other party).

communication disorder, or (2) because of difficulty in speaking or comprehending the English language, cannot fully understand the proceedings or any charges made against the person." Minn. Stat. § 611.31 (2014). A deaf person who is arrested for drunk driving is not automatically guaranteed an interpreter under Minn. Stat. § 611.32 (2014). *State v. Kail*, 760 N.W.2d 16, 20-21 (Minn. App. 2009). The statute requires law enforcement to provide an interpreter "when a person is actually disabled in communications because he cannot understand the proceeding." *Id.* at 20. The district court is required to appoint a qualified interpreter to assist a person who is disabled in communication throughout any preliminary proceeding or proceeding involving possible criminal sanctions or confinement. Minn. Stat. § 611.32, subd. 1.

Appellant disputes the district court's finding that he did not meet the statutory definition of a "person disabled in communication." Appellant contends that he did not understand his arrest or the ICA process because the officers failed to reduce all of their communication with him to written form, and that they ignored his repeated requests for an interpreter. Relying on *Kail*, appellant asserts that law enforcement should have assigned him an interpreter so he could fully understand all of the communications exchanged during his arrest and the administration of the ICA. 760 N.W.2d at 19.

In *Kail*, this court addressed the circumstances under which a defendant is entitled to an interpreter under Minn. Stat. § 611.31. We held that

> Section 611.31 establishes that entitlement to an interpreter depends not merely on whether the individual suffers a disability, but on whether a communication disorder or language barrier prevents that person from fully understanding the proceedings. One who fully understands the arrest and

7

> postarrest implied consent proceeding despite having hearing and speech deficiencies is not a "person disabled in communication" and is therefore not entitled to an interpreter.

*Id.* at 19. In *Kail*, this court determined that the evidence showed a suspected drunk driver who could not hear or speak, fully understood the DWI arrest and the ICA process. *Id.* at 20. The driver never asked for an interpreter, and law enforcement did not assign an interpreter to him. Factors pointing to the driver's full understanding included the exchange of written notes between the officer and the driver demonstrating the driver's understanding and ability to communicate in written English, and the officer's care and concern in his written communications to the driver assuring that the driver understood. *Id.*

Following *Kail*, we conclude that the district court did not err in finding that appellant fully understood both his arrest and the ICA process. Appellant successfully communicated both orally and in writing with the officers during the traffic stop and the ICA. During the traffic stop, appellant gave sensible and timely verbal answers to the officers' questions. During the ICA process, appellant was provided with the ICA form and the record establishes that appellant, who is a college graduate, could read English. Despite his assertions to the contrary, appellant's written communications with the officers demonstrate that he was capable of understanding the communications exchanged during his arrest and the post-arrest process.

Appellant argues that the district court erred in crediting the officers' subjective belief that he was being uncooperative in support of its finding that he did not need an interpreter. Appellant relies on *Farrah*, a case where the Minnesota Supreme Court

8

reversed and remanded a defendant's fourth-degree criminal-sexual-conduct conviction because the district court improperly credited a police officer's belief that the defendant, who had difficulty communicating in English, adequately comprehended the officer's questions and he knowingly and intelligently waived his *Miranda* rights. 735 N.W.2d at 341-42. The court held that the totality of the evidence demonstrated that the defendant was disabled in communication under Minn. Stat. § 611.31, and that he should have been provided with an interpreter. *Id.* at 342-43.

Here, the district court's reliance on the officers' subjective belief that appellant failed to cooperate during his arrest and the ICA process gives us pause. While we defer to the district court's credibility determinations, *Snyder*, 744 N.W.2d at 22, we recognize the possibility that an officer may misconstrue a deaf driver's silence or inability to speak during an arrest or post-arrest process as objective evidence that the driver is failing to cooperate. In turn, the district court may wrongly conclude that the driver does not need an interpreter by relying on the officer's subjective perception of events. Instead, the district court should conduct an independent examination of the record for objective evidence that the driver is capable of fully communicating with law enforcement. In this case, we do not affirm appellant's test-refusal conviction upon the officers' belief that appellant was playing games and failed to cooperate. But we do find strong evidence in the record demonstrating that, despite appellant's hearing impairment, he was able to fully communicate with officers.

In a case where it is not as clear that a hearing-impaired driver fully understands all of the communications exchanged with law enforcement, and where the driver asks for an

9

interpreter, the better practice is for law enforcement to provide the driver with an interpreter. If an interpreter is not available, law enforcement should obtain a search warrant to procure a sample of the driver's blood.[2]

## II. Appellant's right to counsel was vindicated.

The Minnesota Constitution provides individuals who are arrested for DWI with a limited right to counsel before deciding whether to submit to a breath test. Minn. Const. art. I, § 6; *Kuhn v. Comm'r of Pub. Safety*, 488 N.W.2d 838, 840 (Minn. App. 1992), *review denied* (Minn. Oct. 20, 1992). This right is vindicated if the driver "is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991) (quotation omitted). "The question of whether a person has been allowed a reasonable time to consult with an attorney is a mixed question of law and fact." *Palme v. Comm'r of Pub. Safety*, 541 N.W.2d 340, 344 (Minn. App. 1995) (quotation omitted), *review denied* (Minn. Feb. 27, 1996).

We examine the totality of the circumstances when determining whether a driver's right to counsel was vindicated. *See Kuhn*, 488 N.W.2d at 842. In assessing whether an officer vindicated a driver's limited right to counsel, we focus "both on the police officer's duties in vindicating the right to counsel and the defendant's diligent exercise of the right." *Id.*

---

[2] We realize that obtaining a search warrant for a blood draw will create a situation where a hearing-impaired person will face the intrusive reality of a blood test rather than a breath test. But this type of situation is an inescapable reality in light of the U.S. Supreme Court's decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013).

Appellant argues that his right to counsel was not vindicated because officers failed to clearly communicate that he had a right to an attorney and to provide him with the resources to exercise that right. Viewing the totality of the circumstances, we conclude that appellant's right to counsel was vindicated because he shook his head "no," indicating that he did not want to exercise this right, despite the fact that the officers provided him with access to a telephone and computer, as well as a reasonable amount of time to contact and speak with an attorney. *See id*. Although appellant stated sometime after the officers had completed the ICA that Jade Johnson was his attorney, this was not an attempt to exercise his limited right to counsel because he did not express a desire to contact an attorney during the ICA. *See State v. Slette*, 585 N.W.2d 407, 410 (Minn. App. 1998) (holding that if a suspected drunk driver's request for an attorney during the ICA process is ambiguous, police are required to either clarify the request or vindicate the underlying right).

Appellant argues that given the late hour, he should have been given at least an hour to contact an attorney. But the district court did not err when it found that appellant never made a good faith and sincere effort to exercise his right to contact an attorney when given the opportunity during the ICA. *See Kuhn*, 488 N.W.2d at 840. For the same reason, we conclude that the police department did not violate federal law by failing to provide a phone with TTY capabilities because appellant never exercised his right to counsel.

11

**III.** **There was sufficient evidence to support the jury's guilty verdict on the third-degree DWI charge.**

In considering a claim of insufficient evidence, this court's review is limited to a thorough analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

Appellant argues that the jury erred in convicting him of third-degree DWI, arguing that the circumstantial evidence presented by the state was insufficient to allow the jury to rationally conclude beyond a reasonable doubt that he was driving while impaired.

"[W]hen a disputed element [of a crime] is sufficiently proven by direct evidence alone, . . . it is the traditional standard [for evaluating the sufficiency of the evidence], rather than the circumstantial-evidence standard, that governs." *State v. Horst*, 880 N.W.2d 24, 39-40 (Minn. 2016). Viewing the verdict in the light most favorable to the conviction, there is strong direct evidence that appellant was driving while impaired. The evidence presented to the jury included Officer Lee-Faust's observation of appellant failing to signal before turning, appellant's display of indicia of intoxication, appellant's admission to drinking alcohol that evening, and the officer's observations of opened and unopened beer cans in appellant's vehicle. For these reasons, we will not disturb appellant's third-degree DWI conviction. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

**Affirmed.**

12