# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-3213

_____

Leslie Wilson

*Plaintiff - Appellant*

v.

Wells Fargo Bank, N.A.; U.S. Bank National Association

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 12, 2018
Filed: July 17, 2018
[Unpublished]

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

PER CURIAM.

_____

[*]This opinion is filed by Chief Judge Smith and Judge Colloton under Eighth Circuit Rule 47E.

Leslie Wilson appeals the district court's[1] grant of summary judgment in favor of Wells Fargo Bank, N.A., and U.S. Bank, N.A. on her claims that Wells Fargo violated Minnesota's dual-tracking statute, Minn. Stat. Ann. § 582.043. We affirm.

I. *Background*

Leslie Wilson and her husband DeAundres Wilson bought a condominium in Minneapolis, Minnesota, in 2000 and financed the purchase with a mortgage loan. In 2003, the Wilsons refinanced their mortgage loan and signed a promissory note in the amount of $198,000, giving a mortgage to the lender as security for the debt. The mortgage was immediately assigned to Wells Fargo and later assigned to U.S. Bank. Wells Fargo remained the servicer on the loan after the assignment to U.S. Bank (hereinafter, collectively referred to as "Wells Fargo").

The Wilsons separated[2] in 2004, and DeAundres moved out of the condominium. DeAundres remained on the mortgage, however, and continued making some of the mortgage payments.

On March 18, 2014, Wells Fargo notified the Wilsons that their loan was in default for failure to make payments. On May 5, 2014, Wells Fargo informed the Wilsons that the mortgage would be referred for foreclosure and asked them to contact Wells Fargo for assistance. Wells Fargo also included "a summary of the efforts [it] ha[d] made (known as 'loss mitigation') to provide mortgage assistance options that might help [the Wilsons] avoid foreclosure." Appendix to Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Attachment 1, at 47, *Wilson v. Wells Fargo Bank, N.A. et al.*, No. 0:15-cv-01768-PAM-TNL (D.

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

[2]Throughout these proceedings, the Wilsons have never divorced or legally separated.

Minn. Apr. 1, 2016), ECF No. 23-1. When the Wilsons did not respond to this letter, Wells Fargo instituted foreclosure proceedings on June 30, 2014. The sheriff's sale was scheduled for September 12, 2014, and the Wilsons were informed of this date in a letter dated July 22, 2014.

On July 30, 2014, Leslie wrote to Wells Fargo asking for loan assistance. She submitted a "Hardship Affidavit Form" and a "Dodd-Frank Certification." Appellant's App. at 35–37. Both documents are dated July 30, 2014. The Hardship Affidavit Form, provided by Wells Fargo, indicates, "I am/We are *requesting review* of my/our current financial situation to determine whether I/we qualify for temporary or permanent mortgage relief options." *Id*. at 35 (emphasis added). On August 4, 2014, Wells Fargo acknowledged that it had "received the documents you sent us to move forward with your *request for mortgage assistance*." Appendix to Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Attachment 2, at 3, *Wilson v. Wells Fargo Bank, N.A. et al.*, No. 0:15-cv-01768-PAM-TNL (D. Minn. Apr. 1, 2016), ECF No. 23-2 (emphasis added).

On August 5, 2014, Wells Fargo wrote to the Wilsons and explained that Wells Fargo needed to receive certain documentation by September 4, 2014. The documentation was required to determine whether the Wilsons qualified for a loan modification. The requested documentation included: (1) a "Homeowner Financial Assistance Form," including a "'hardship affidavit' and additional Hardship Affidavit forms to be completed and *signed by all borrowers*"; (2) a "Dodd-Frank Certification Form"; (3) "[a] signed and dated copy of the enclosed IRS Form 4506-T (Request for Transcript of Tax Return) *for each borrower*"; and (4) "[p]roof of income information . . . to verify all income of *each borrower*." *Id.* at 7 (emphases added). With respect to proof of "[g]ross monthly income," Wells Fargo explained that if the Wilsons could not provide paystubs, each of them had to submit a letter on employer letterhead, signed and dated within the last 30 days, showing year-to-date income. *Id.* Wells Fargo also explained that "other income" included child-support payments;

proof of such payments could be shown by a divorce decree or other legal agreement filed with a court and by providing copies of bank statements or other documents showing such payments. *Id*. at 8.

It is undisputed that Leslie understood that "Wells Fargo had a deadline for [her] to submit *all* [requested] documentation" and that she "had to submit *all* of the required documentation to be considered for a loan modification." Appendix to Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Attachment 3, at 25, 26, *Wilson v. Wells Fargo Bank, N.A. et al.*, No. 0:15-cv-01768-PAM-TNL (D. Minn. Apr. 1, 2016), ECF No. 23-3 (emphases added). She also testified that she understood that unless she had proof of a divorce or a quitclaim deed from DeAundres (which she did not have), DeAundres was required to participate in the loan-modification process because he had signed the promissory note and mortgage on the property.

Leslie first asked DeAundres to participate in the loan-modification process in August 2014. He declined to do so. DeAundres "didn't want to entangle [their] finances." *Id*. at 19. Thus, he did not sign the Homeowner Financial Assistance Form or submit any of the other information that Wells Fargo requested to effectuate a modification.

On August 21, 2014, Wells Fargo wrote to the Wilsons and explained that they still needed to submit documentation to Wells Fargo for it to begin processing their request for mortgage assistance. Wells Fargo stated that it needed the missing documents by September 5, 2014, thus adding one day to the previously stated deadline of September 4, 2014.

Wells Fargo wrote to the Wilsons again on August 26, 2014, reiterating that documents necessary for their application were still missing; the letter specifically identified the documents that DeAundres needed to submit, including (1) "a signed

and dated Homeowners Financial Assistance Form"; (2) "a signed and dated IRS Form 4506T"; (3) "a signed and dated hardship affidavit"; (4) documentation to verify income (including pay stubs); (5) "a signed and dated Dodd-Frank Certification"; and (6) profit-and-loss statements. Appendix to Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Attachment 2, at 38–39. Wells Fargo asked the Wilsons to submit the documents by September 2, 2014.

When September 2014 arrived, DeAundres still had not provided any of the required documents. According to Leslie, "Wells Fargo [had] informed [her] that [DeAundres] needed to be part of the application process." Appendix to Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Attachment 3, at 27. Therefore, she understood that her "application was incomplete" without his documentation. *Id.* On September 3, 2014, Wells Fargo notified the Wilsons that because it had not received a completed application, it was unable to offer them a loss mitigation option. Wells Fargo proceeded towards sale of the condominum.

But on September 4, 2014, Wells Fargo discovered that while its August 26 letter to the Wilsons gave them until September 2 to submit the required information, its earlier letter on August 21 had given them until September 5 to submit the documents. As a result, Wells Fargo reviewed the Wilsons' file again on September 5, 2014. On that date, Wells Fargo's Cancellation Review Team found that the information requested from DeAundres was still missing. That same day, Leslie contacted Wells Fargo to inform it that DeAundres had agreed to participate in the process and submit the requested documents. Wells Fargo advised Leslie that it would not postpone the sheriff's sale scheduled for September 12, 2014, unless the Wilsons' application was complete.

On September 8, 2014, the Wilsons received a letter stating, "I'm writing to let you know we received the documents you sent us to move forward with your request for mortgage assistance. Thank you for providing your information." Appellant's App. at 26. The letter also provided that after Wells Fargo "ensure[s] that we have all the documents we need, we will review and validate those materials to determine if you're eligible for a loan modification." *Id.* But, the next day, a Wells Fargo representative wrote again to the Wilsons, stating, "Your application has been pending for a considerable period of time and we have not yet received a complete application. Because you have not provided me with all the required documentation, to complete the application, we are not able to offer you assistance options." *Id*. at 28.

Wells Fargo reviewed the Wilsons' loan file on September 10, 11, and 12, 2014, to determine whether the Wilsons had submitted the necessary documents. Wells Fargo representatives spoke with Leslie and told her what documents were missing. Though Wells Fargo received some of the required documents from DeAundres on September 10 and 11, 2014, Wells Fargo did not receive all of them by 10:00 a.m. on September 12, 2014, the time of the foreclosure sale. At that time, Wells Fargo was still missing proof of DeAundres's income from his employer, proof of child-support payments received by Leslie, and a signed copy of DeAundres's most recent business and personal tax returns.

On September 12, 2014, at 10:00 a.m., the sheriff's sale was held, and U.S. Bank purchased the property. The sale was subject to a six-month redemption period, which expired on March 12, 2015. The Wilsons did not redeem the property from foreclosure.

On March 11, 2015, the day before the redemption period expired, Leslie[3] filed suit in Minnesota state court against Wells Fargo, alleging that it violated

---

[3]DeAundres is not a party to this case.

Minnesota's dual-tracking statute, Minn. Stat. Ann. § 582.043. Relevant to the present appeal, Count 1 alleged that the foreclosure was illegal because it violated subdivision 6(c) of § 582.043. Count 2 alleged that Wells Fargo did not allow Leslie a reasonable time to submit documents, as subdivision 5(2) of § 582.043 requires. Wells Fargo removed the matter to federal court and moved for summary judgment on all claims. The district court granted Wells Fargo's motion. Leslie appeals.

## II. *Discussion*

Leslie argues that the district court erred in granting summary judgment to Wells Fargo on her claims that Wells Fargo violated Minnesota's dual-tracking statute. We review de novo the district court's grant of summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citation omitted).

### A. *Minn. Stat. Ann. § 523.043, subd. 6(c)—Dual Tracking*

Leslie's primary argument is that Wells Fargo violated Minn. Stat. Ann. § 582.043, subd. 6(c), the "dual-tracking" provision of the statute, which provides:

> If the servicer receives a *loss mitigation application* after the foreclosure sale has been scheduled, but before midnight of the seventh business day prior to the foreclosure sale date, the servicer must *halt the foreclosure sale and evaluate the application*. If required to halt the foreclosure sale and evaluate the application, the servicer must not move for an order of foreclosure, seek a foreclosure judgment, or conduct a foreclosure sale . . . .

(Emphases added.)

Leslie contends that all that was necessary to trigger Wells Fargo's obligation to halt the foreclosure sale was her submission of her Hardship Affidavit Form on July 30, 2014. She notes that Wells Fargo acknowledged receiving her form on

August 4, 2014, and acknowledged receiving requested documentation on September 8, 2014. Because Wells Fargo never halted the foreclosure sale after receiving her form and acknowledging receipt of her documentation, Leslie maintains that Wells Fargo violated the dual-tracking statute. She argues that the district court erred in finding that the statute requires submission of a "complete" loss mitigation application before a servicer must halt the foreclosure sale because no such requirement exists in the statute.

Section "582.043 (2016) requires mortgage servicers to notify mortgagors of loss mitigation options before referring the mortgage for foreclosure." *Litterer v. Rushmore Loan Mgmt. Servs., LLC for U.S. Bank Nat'l Ass'n*, 905 N.W.2d 623, 624 (Minn. 2018) (citing Minn. Stat. Ann. § 582.043, subds. 3, 5). The statute's purpose is to "prohibit[] 'dual tracking,' in which a servicer refers a mortgage to an attorney for foreclosure while simultaneously processing a loss mitigation application." *Id.* (citing Minn. Stat. Ann. § 582.043, subd. 6). The statute provides "a cause of action for mortgagors to enjoin or set aside a foreclosure sale based on a violation of section 582.043." *Id.* (citing Minn. Stat. Ann. § 582.043, subd. 7(a)).

Section 582.043 distinguishes between a loss mitigation application and a "request for a loan modification or other loss mitigation option." Minn. Stat. Ann., subd. 5(2). Subdivision 6(c) of § 582.043 requires a mortgage servicer to "halt [a] foreclosure sale" only when "the servicer receives a loss mitigation application after the foreclosure sale has been scheduled." Once a servicer receives a "loss mitigation application," the servicer must "evaluate the mortgagor for all available loss mitigation options prior to referring a mortgage loan to an attorney for foreclosure." Minn. Stat. Ann. § 582.043, subd. 5(3). Additionally, "after review of the loss mitigation application," the servicer must "timely offer the mortgagor a loan modification if the mortgagor is eligible or, if not, timely offer the mortgagor any other loss mitigation option for which the mortgagor is eligible." *Id*. § 582.043, subd. 5(4).

-8-

By comparison, subdivision 5(2) of § 582.043 provides that a borrower's "*request* for a loan modification or other loss mitigation option" triggers a servicer's duty to "exercise reasonable diligence in obtaining documents and information from the mortgagor *to complete a loss mitigation application*, facilitate the submission and review of loss mitigation applications, and give the mortgagor a reasonable amount of time to provide the required documents." (Emphases added). Thus, subdivision 5(2) requires a servicer to take steps to help the borrower turn a *request* for a loan modification or other loss mitigation option into a formal loss mitigation application, while subdivision 6 sets out a servicer's obligations once the request has become an *application*.

Leslie's submission of the Hardship Affidavit Form on July 30, 2014, was a *request* for a loan modification under subdivision 5(2) that did not obligate Wells Fargo to halt the foreclosure sale. The form provides that the Wilsons were "*requesting review* . . . to determine whether [they] qualifi[ed] for temporary or permanent mortgage relief options." Appellant's App. at 35 (emphasis added). Leslie even characterizes her sending of these documents as a "loan modification *request*." Appellant's Br. at 11 ("Notwithstanding the receipt of the loan modification *request*, the defendant did not halt the foreclosure . . . ." (emphasis added)); *id.* ("[O]n August 4, 2014, Wells Fargo acknowledged receipt of the *request* for the loan modification to a letter to the Appellant." (emphasis added)). On August 4, 2014, Wells Fargo acknowledged that it had received the Wilsons' "*request* for mortgage assistance." Appendix to Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Attachment 2, at 3 (emphasis added).

The question, therefore, is whether the documentation that Leslie submitted after July 30, 2014, to Wells Fargo is sufficient to constitute a loss mitigation application that obligated Wells Fargo to halt the foreclosure proceeding. Leslie has failed to show that Wells Fargo received *all* of the documentation it requested from

DeAundres for the loss mitigation application. The record shows that at the time of the foreclosure sale, Wells Fargo still lacked proof of DeAundres's income from his employer, proof of child-support payments received by Leslie, and a signed copy of DeAundres's most recent business and personal tax returns.[4]

The Minnesota state courts have not defined "loss mitigation application" in § 582.043, subd. 6(c). However, in *Wells Fargo Bank, N.A. v. Lansing*, the Minnesota Court of Appeals rejected an appellant's argument that Wells Fargo violated the dual-tracking statute, finding "no evidence in the record indicating that appellant *completed or submitted* a loss-mitigation application to Wells Fargo." No. A14-0868, 2015 WL 506655, at *3 (Minn. Ct. App. Feb. 9, 2015) (emphasis added).[5]

---

[4]On September 8, 2014, the Wilsons did receive a letter from Wells Fargo advising them that it had "received the documents you sent us to move forward with your request for mortgage assistance." Appellant's App. at 26. But the letter also provided that Wells Fargo had to "ensure that [it] ha[d] all the documents [it] need[ed]" and must "review and validate those materials to determine if [the Wilsons were] eligible for a loan modification." *Id.* The letter never stated that the Wilsons had submitted *all* necessary documentation. In fact, the next day, Wells Fargo wrote again to the Wilsons, stating, "Your application has been pending for a considerable period of time and we have not yet received a complete application. Because you have not provided me with all the required documentation to complete the application, we are not able to offer you assistance options." *Id.* at 28. Leslie has not identified any evidence in the record that she did, in fact, submit all requested documents.

[5]In *Lansing*, the appellant raised for the first time on appeal the issue of whether Wells Fargo violated § 582.043, subd. 6. As a result, the court noted that, as a general rule, it did not "consider matters not argued to and considered by the district court." *Id.* at *3. However, the court determined that even if the appellant had properly raised the issue, the "appellant's claim [was] not persuasive." *Id.*

The *Lansing* court did not further elaborate on what constitutes a "completed" loss mitigation application, and we need not do so in the present case. In her deposition, Leslie confirmed her understanding that she had to submit *all* requested documentation to be eligible for the loan modification and had to do so by the deadline. Leslie also understood that her "application was incomplete" without DeAundres's documentation. Appendix to Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Attachment 3, at 27. Based on this factual record, Wells Fargo did not receive a "completed" loss mitigation application that obligated Wells Fargo to halt the foreclosure sale. *See Lansing*, 2015 WL 506655, at *3.

Accordingly, we hold that the district court did not err in granting summary judgment on Leslie's dual-tracking claim.

B. *Section 523.043, subd. 5(2)–Reasonable Amount of Time*[6]

Leslie also argues that genuine issues of material fact exist over whether Wells Fargo failed to allow her a reasonable amount of time to provide the required documents. She notes that four days before the foreclosure sale, Wells Fargo gave her

---

[6]In her opening brief, Leslie asserts that "[t]here were genuine issues of material fact which precluded summary judgment with respect to counts two and three." Appellant's Br. at 42. Count 3 alleged a violation of § 582.043, subd. 5(5). Although Leslie mentions Count 3, nowhere in her brief does she cite or discuss § 582.043, subd. 5(5). As a result, Wells Fargo argues in its brief that Leslie waived any challenge to the district court's judgment on her subdivision 5(5) claim. *See* Appellee's Br. at 15. In her reply brief, Leslie disagrees, arguing that she "challenges the District Court's application of [§] 582.043 in all aspects . . . ." Appellant's Reply Br. at 28. Yet, Leslie thereafter does not cite or discuss subdivision 5(5). Because "[t]he substance of [Leslie's] opening brief fails to present any meaningful argument about [Count 3 and § 582.043, subd. 5(5)], . . . we therefore conclude that [Leslie] has waived review of [her claim]." *Akins v. Knight*, 863 F.3d 1084, 1087 n.2 (8th Cir. 2017) (per curiam) (citation omitted), *cert. denied*, 138 S. Ct. 992 (2018).

a letter indicating it had received her loss mitigation application; therefore, it should have halted the sale and given her a reasonable amount of time to submit documents necessary to evaluate her request. She asserts that "reasonableness" is a question of fact for the jury, not the court. She also argues that the district court disregarded facts showing that Wells Fargo was requesting documents through the date of the foreclosure sale. On that morning, she argues, Wells Fargo was requesting additional documents that DeAundres had submitted.

Subdivision 5(2) of § 582.043 provides that after a servicer receives "a request for a loan modification or other loss mitigation option," it must "exercise reasonable diligence in obtaining documents and information from the mortgagor to complete a loss mitigation application, facilitate the submission and review of loss mitigation applications, and give the mortgagor *a reasonable amount of time* to provide the required documents." (Emphasis added.) Leslie argues that whether a servicer gave a borrower a "reasonable amount of time" to provide documents is always a factual question for resolution by the factfinder. But Minnesota law indicates that what constitutes a "reasonable amount of time" is a question of law if the facts are undisputed. *Cf. Gergen v. Comm'r of Pub. Safety*, 548 N.W.2d 307, 309 (Minn. Ct. App. 1996) ("Whether a driver's right to counsel was vindicated becomes a question of law for the appellate court if the facts are undisputed." (citation omitted)); *Peters v. Comm'r of Pub. Safety*, No. C0-94-1501, 1995 WL 59265, at *2 (Minn. Ct. App. Feb. 14, 1995) ("Whether a person was given a reasonable amount of time to contact counsel is a mixed question of fact and law. Once the 'facts are established, their significance becomes a question of law.'" (citations omitted)).

Here, the undisputed facts show the following. Leslie requested a loan modification on July 30, 2014. Wells Fargo gave Leslie conflicting dates as to when those documents were due: September 4, September 5, and September 2. On September 3, Wells Fargo wrote to the Wilsons and explained that because it had not

received a completed application, it was unable to offer them a loss mitigation option. The following day, on September 4, Wells Fargo discovered that while its August 26 letter to the Wilsons gave them until September 2 to submit the required information, its earlier letter on August 21 had given the Wilsons until September 5 to submit the information. Thus, Wells Fargo reviewed the Wilsons' loan file again on September 5. On that date, Wells Fargo's Cancellation Review Team found that the information requested from DeAundres was still missing. That same day (September 5), Leslie contacted Wells Fargo to inform it that DeAundres had agreed to provide information. Wells Fargo told her that it would not postpone the sheriff's sale scheduled for September 12 unless the Wilsons' application was complete. Despite the September 5, 2014 deadline, Wells Fargo continued to review the Wilsons' file and accept documents from them until September 12, 2014.

Based on the conflicting due dates in the letters that Wells Fargo sent the Wilsons, Wells Fargo gave the Wilsons until September 5, 2014—32 days after it acknowledged receipt of Leslie's request—to submit the documents necessary to complete a loss mitigation application. Wilson has introduced no evidence showing that 32 days was an unreasonable amount of time for her to provide the requested documents, especially considering that Wells Fargo repeatedly sent letters detailing the required information it still needed from the Wilsons to complete their application during this 32-day period. Moreover, Wells Fargo continued to review the Wilsons' file and accept documents from the Wilsons up to the date of the foreclosure sale on September 12, 2014.

Accordingly, we hold that the district court did not err in granting summary judgment on Leslie's claim under § 582.043, subd. 5(2).

### III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____

-13-